[No. B148834. Second Dist., Div. Seven. Aug. 13, 2002.]

MARY HERBERG et al., Plaintiffs and Appellants, v.
CALIFORNIA INSTITUTE OF THE ARTS, Defendant and Respondent.

144

**COUNSEL**

Lisa S. Kantor for Plaintiffs and Appellants.

Musick, Peeler & Garrett, Stuart W. Rudnick, Richard S. Conn and Kirsten C. Love for Defendant and Respondent.

**OPINION**

**PERLUSS, J.**—Mary Herberg, an administrative employee of defendant California Institute of the Arts (CalArts), was depicted in a vulgar and

sexually oriented drawing prepared by two CalArts students. The drawing was displayed as part of a year-end exhibition of student art in CalArts's main gallery for approximately 24 hours. Herberg, along with her daughter Bobette Heuer and her granddaughter Deborah Dutro (also CalArts employees), sued CalArts for sexual harassment under the California Fair Employment and Housing Act, Government Code section 12940 et seq. (FEHA),[1] alleging the display of the drawing created a hostile working environment. The trial court granted summary judgment in favor of CalArts. We affirm the judgment of the trial court because the undisputed facts establish the alleged harassment was not sufficiently severe or pervasive to alter the conditions of the plaintiffs' employment and create a hostile work environment.

### FACTUAL AND PROCEDURAL BACKGROUND

CalArts is a private, postsecondary educational institution offering degree programs in the fine and performing arts. In May 1999, Herberg was 82 years old and worked as a cashier in the accounting office at CalArts. Her daughter, Heuer, was the director of financial aid at CalArts. Heuer's daughter, Dutro, was the purchasing and production manager at CalArts's office of public affairs.

CalArts's policy on censorship is contained in its administrative manual: "A. CalArts does not censor *any* work on the basis of content; nor is *any* work at the Institute subject to prior censorship. [¶] B. If any person objects to any exhibit or presentation, that person should convey the objection in writing to the student's dean. The person will receive a written answer to the objection within 48 hours of its receipt. If the person is dissatisfied with the decision, he/she may appeal it to the [Exhibit Review] Committee. The decision of the Committee is final."[2]

CalArts's staff handbook, student handbook and administrative manual all state that it is CalArts's "official policy" to maintain a workplace free of all forms of unlawful harassment. The policy is also contained in a separate booklet titled "Policy on Sexual Harassment." The booklet, the student handbook and the administrative manual also state, "The content of artistic and intellectual property is protected by the constitutional right to free speech. It is not the intention of the sexual harassment policy to intrude on that right."

CalArts requires its first year art students to take an introductory course known as Foundation Art Class. During the 1998-1999 academic year, the

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

[2] The administrative manual provides that the Exhibit Review Committee is responsible for "[t]he allocation of space or the adjudication of any difference of opinion concerning an exhibit or presentation."

students in the Foundation Art Class were permitted to exhibit their own creative work as part of an end-of-the-year show at CalArts's main gallery. Pursuant to CalArts's policy, Foundation Art Class students were not required to obtain approval from anyone before exhibiting their work in the main gallery.

In the early morning hours of May 13, 1999, two students in the Foundation Art Class, Jeremy Ringermacher and Ariel Rosenberg, exhibited a piece they titled The Last Art Piece. The Last Art Piece is a pencil drawing, about 25 by 40 inches, depicting Herberg and other CalArts faculty, staff and students engaged in various sexual acts. Herberg appears in the center of the drawing, bare-breasted and facing the viewer. She is depicted sitting on top of a nude male faculty member, straddling his groin as though the two were engaged in sexual intercourse.

Soon after she arrived at work on May 13, 1999, Dutro was approached by her supervisor, Anita Bonnell. Bonnell was upset and told Dutro there was a display in the main gallery that depicted Dutro's grandmother and Dutro should go see it. As Dutro made her way to the main gallery to see the drawing, she met Lynn Rosenfeld, the secretary of CalArts's president Steve Lavine. Rosenfeld told Dutro " 'the Institute was aware of it and that it was being taken care of.' " Dutro was quite upset when she saw the drawing. Dutro returned to her office and complained to her supervisor.

Heuer found out about The Last Art Piece at 11:00 that morning when she was called into the office of CalArts's provost, Beverly O'Neill. Myrna Saltzberg, director of human resources, was also present. O'Neill told Heuer that a student drawing had been displayed that depicted Heuer's mother in a "vulgar" way. O'Neill and Saltzberg suggested that Heuer take her mother out of town for the weekend so her mother would not see the drawing. Heuer was embarrassed and left the meeting in tears.

After her meeting with O'Neill and Saltzberg, Heuer went to the main gallery and saw the drawing for the first time. She was "horrified and embarrassed." Others present in the gallery also appeared to be outraged by the drawing, including a person who told Heuer, " 'If it were my mother, I would tear that painting off the wall.' " Heuer returned to her office and called her husband in tears. He promised to consult an attorney about trying to have The Last Art Piece removed from the gallery.[3]

After lunch, CalArts's vice-president of administration, Dean Houchin, came to Heuer's office, told her he felt "very badly" about what had

---

[3]Sometime before the close of business, an attorney faxed a letter to Lavine on behalf of Herberg, Heuer and Dutro, asserting the display of The Last Art Piece had caused them to

happened and explained the proper procedure for objecting to the display of The Last Art Piece. In Houchin's presence, Heuer wrote down her objections to the drawing and a request that it be removed. Houchin promised to present the objection to the dean of the art school and to ask that the process be expedited. Heuer also personally protested the display of The Last Art Piece to CalArts's provost and human resources director.

About 1:00 p.m., Heuer and Dutro called Herberg and asked her to come to Heuer's office, where they told her about The Last Art Piece.[4] Herberg did not see the drawing; nevertheless, she was so upset by the information about the drawing that she left work immediately. Herberg suffered an asthma attack later that afternoon and subsequently developed problems with eating and sleeping. She never returned to her job at CalArts.

Later in the afternoon of May 13, 1999, Heuer returned to the main gallery and saw 10 to 15 students and faculty members viewing The Last Art Piece. Heuer was again upset to the point of weeping. By this time, The Last Art Piece had provoked a substantial controversy among CalArts's faculty, students and staff. Two members of the staff wrote to the dean of the art school asking that the drawing be removed. Throughout the day, the student artists participated in formal and informal critique sessions about The Last Art Piece and its effect on Herberg and the rest of the CalArts community.

A reception held in the main gallery that evening was attended by about 100 people. Heuer, her husband and Dutro returned to the main gallery in the late evening to see if The Last Art Piece had been removed. It had not.

About 4:00 a.m. on May 14, 1999, Rosenberg voluntarily removed the drawing from the main gallery because he and cocreator Ringermacher "felt that our point had been made and the sketch had served its purpose."[5] Rosenberg wrote a letter of apology to Herberg several days later. Despite the fact that the drawing had been removed, the committee met on May 17, 1999 to address Heuer's complaint. The committee held an open forum to address the situation on May 21, 1999, with CalArts's president Lavine presiding. The committee subsequently reconvened and determined that CalArts had acted in accordance with its policy regarding censorship and in furtherance of its educational goals. The Last Art Piece has not been displayed since, and a student who tried to display it at the May 21 forum was prevented from doing so.

---

suffer "personal injury . . . caused by sexual harassment and of the maintenance of a hostile workplace," and demanding that the drawing be removed immediately.

[4] Earlier that day, a faculty member in the film school informed Dutro that Herberg needed to be informed about the drawing and that he would do so if Dutro did not.

[5] The drawing was the students' response to an art theory that characterized representational art as passé and incapable of evoking a strong response. See footnote 11, *post.*

Herberg, Heuer and Dutro, as well as Sharon Yeates, another staff member depicted in The Last Art Piece, filed suit against CalArts on January 24, 2000.[6] Their complaint alleged "Invasion of Privacy-Misappropriation of Image or Likeness" and employment discrimination under FEHA.

On December 19, 2000, the trial court granted CalArts's motion for summary judgment. Judgment was entered in favor of CalArts on January 10, 2001. This appeal followed.[7]

## DISCUSSION

*Standard of Review.*

■ The standard of review on appeal after an order granting summary judgment is well settled. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (*o*)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted. "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' [Citation.]" (*Binder v.*

---

[6]Yeates is not a party to this appeal.

[7]On appeal, plaintiffs have abandoned their claim of misappropriation of likeness. Therefore, we address only the sexual harassment claim.

*Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540]; see also *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1365 [27 Cal.Rptr.2d 681] ["doubts as to the propriety of granting the motion should be resolved in favor of the opposing party"].)

*The Trial Court Correctly Granted Summary Judgment on Plaintiffs' Sexual Harassment Claim Under FEHA Because the 24-hour Display of The Last Art Piece Did Not Constitute "Severe or Pervasive" Harassment.*

■ Section 12940, subdivision (j)(1), makes it unlawful for "an employer . . . or any other person, because of . . . sex . . . to harass an employee." Section 12940, subdivision (k), provides an employer must "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Herberg, Heuer and Dutro contend CalArts violated those provisions by permitting two of its students to display The Last Art Piece in the main gallery for approximately 24 hours.

■ Both FEHA and the parallel provisions of title VII of the federal Civil Rights Act of 1964 recognize two theories of liability for sexual harassment claims. (*Kohler v. Inter-Tel Technologies* (9th Cir. 2001) 244 F.3d 1167, 1172; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 606 [262 Cal.Rptr. 842] (*Fisher*) [in analyzing sexual harassment claims under FEHA, California courts look to federal decisions regarding sexual harassment claims under title VII of the federal Civil Rights Act of 1964].) "The first is quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. The second is hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment." (*Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409, 1414 [26 Cal.Rptr.2d 116]; see also *Kohler v. Inter-Tel Technologies, supra,* 244 F.3d at p. 1172.) ■ This case deals solely with "hostile work environment" sexual harassment. Plaintiffs contend the display of The Last Art Piece constituted such severe and pervasive harassment because of sex that it substantially altered the conditions of their employment and created an abusive work environment. (See *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 67 [106 S.Ct. 2399, 2406, 91 L.Ed.2d 49] ["For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' "].)

■ "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from

the totality of the circumstances. [Citation.] The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended. [Citation.]" (*Fisher, supra,* 214 Cal.App.3d at pp. 609-610, fn. omitted.)

Factors to be considered in evaluating the totality of the circumstances include (1) the nature of the unwelcome sexual acts or words (with physical touching generally considered more offensive than mere words); (2) the frequency of the offensive acts or encounters; (3) the total number of days over which all the offensive conduct occurred; and (4) the context in which the sexually harassing conduct occurred. (*Fisher, supra,* 214 Cal.App.3d at pp. 609-610; *Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 465 [79 Cal.Rptr.2d 33].) ▮ Applying these factors to the undisputed facts in the present case, the display of The Last Art Piece in the main gallery for 24 hours did not constitute severe or pervasive harassment because of sex as a matter of law.

*Liability for Sexual Harassment May Not Be Imposed Based on a Single Incident That Does Not Involve Egregious Conduct Akin to a Physical Assault or the Threat of Physical Assault.*

Plaintiffs' hostile work environment claim rests on a single incident: the display of The Last Art Piece in the main gallery for a period of about 24 hours. The trial court properly found that this incident, although doubtless upsetting to the plaintiffs, did not create a workplace that was "so discriminatory and abusive that it unreasonably interfere[d] with the job performance of those harassed." (*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 923.)

In *Brooks v. City of San Mateo, supra,* 229 F.3d 917, the Ninth Circuit Court of Appeals affirmed a summary judgment in favor of the defendant where the alleged harassment consisted of the plaintiff's supervisor forcing his hand under her sweater and bra to fondle her bare breast. (*Id.* at p. 921.) As in this case, the plaintiff "required psychological help and even then was unable to successfully return to her job." (*Id.* at p. 924.) The Ninth Circuit held, "If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe. . . . In *Al-Dabbagh* [*v. Greenpeace, Inc.* (N.D.Ill. 1994) 873 F.Supp. 1105], a single incident was held to be sufficient where the assailant 'slapped [the plaintiff], tore off her shirt, beat her, hit her on the head with a radio, choked her with a phone cord and ultimately forced her to have sex with him.' [Citation.] The perpetrator held the victim captive overnight; when she finally managed to

escape, she had to be hospitalized for her injuries. [Citation.]" (*Id.* at p. 926.) The court concluded, "The brief encounter between [the plaintiff] and [the harasser] was highly offensive, but nothing like the ordeal suffered by the unfortunate young woman in *Al-Dabbagh,* who was held captive from evening until early the next morning. Utilizing the . . . factors of frequency, severity and intensity of interference with working conditions, we cannot say that a reasonable woman in Brooks's position would consider the terms and conditions of her employment altered by [the harasser's] actions." (*Ibid.*)

Although plaintiffs argue that "even a single incident of severe harassment may be sufficient" to establish liability by an employer for sexual harassment, a review of the cases they cite reveals that such a single incident must be severe in the extreme and generally must include either physical violence or the threat thereof. (See *Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 877-878 [dictum: a single incident of forcible rape might be sufficiently severe to create a hostile working environment]; *Department of Corrections v. State Personnel Bd.* (1997) 59 Cal.App.4th 131, 134, 156 [69 Cal.Rptr.2d 34] [hostile work environment liability may exist for a single incident of rape, but no such liability attached for single incident in which corrections officer used profane language and shook a female Hispanic fellow officer by her collar to emphasize his point]; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1042 [58 Cal.Rptr.2d 122] [plaintiff permitted to proceed on hostile work environment harassment claim based on allegations he was drugged and gang-raped]; *Little v. Windermere Relocation, Inc.* (9th Cir. 2001) 265 F.3d 903 [summary judgment in favor of defendant reversed where the plaintiff's hostile work environment claim was based on a rape]; *Vance v. Southern Pacific Tel. and Tel. Co.* (11th Cir. 1989) 863 F.2d 1503, 1510, abrogated on other grounds by *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 20 [114 S.Ct. 367, 369, 126 L.Ed.2d 295] [actionable race-based harassment included two incidents where a noose was hung over African American employee's work station]; *King v. Board of Regents of Univ. of Wis. System* (7th Cir. 1990) 898 F.2d 533, 537 ["Although a single act can be enough [citation] generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident"];[8] *Radtke v. Everett* (1993) 442 Mich. 368, 395 [501 N.W.2d 155, 168] [under Michigan law, "[a]lthough rare, single incidents *may* create a hostile environment—rape and violent sexual assault are two possible scenarios"].)

In support of their position, plaintiffs heavily rely on a Fifth Circuit Court of Appeals case, *Bennett v. Corroon & Black Corp.* (5th Cir. 1988) 845 F.2d

---

[8]In *King v. Board of Regents of Univ. of Wis. System, supra,* 898 F.2d 533, the acts complained of were "repeated, unwelcome advances, fondling and a physical attack." (*Id.* at p. 540.)

104 (*Bennett*), in which the alleged harassment consisted of the posting of obscene cartoons bearing the plaintiff's name in the men's room at her workplace. Plaintiffs cite the court's statement that "[a]ny reasonable person would have to regard these cartoons as highly offensive to a woman who seeks to deal with her fellow employees and clients with professional dignity and without the barrier of sexual differentiation and abuse. This is a perfect matrix to grow the hostile environment subjecting a woman to the discriminatory intimidation, ridicule, and insult which Title VII protects against." (*Id.* at p. 106.) ██ However, the court of appeals' observation quoted by plaintiffs was not directed to the question whether the harassment was "severe or pervasive," but toward the entirely separate question whether the harassment was "based upon the sex of the plaintiff."[9] (*Bennett,* at p. 106.)

 In fact, the Fifth Circuit in *Bennett affirmed* summary judgment in favor of the defendants on other grounds, noting that "this summary judgment record presents meager proof of the conditions required" to establish severe or pervasive harassment. The court specifically declined to rule whether posting the cartoons was " 'sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive environment" [citation].' " (*Bennett, supra,* 845 F.2d at p. 106.)[10] Thus, *Bennett* does

[9] "Sexual harassment may involve conduct, whether blatant or subtle, that *discriminates against a person solely because of that person's sex.*" (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 345 [21 Cal.Rptr.2d 292], italics added.) In other words, sexual harassment creating a hostile work environment is unlawful because it subjects its victims to "*discriminatory* intimidation, ridicule, and insult . . . ." (*Bennett, supra,* 845 F.2d at p 106, italics added.) Because the record before us seemed to lack evidence of any *discriminatory* harassment, we asked the parties for additional briefing as to whether plaintiffs were subjected to hostile work environment harassment "because of . . . sex," as required by FEHA. (§ 12940, subd. (j)(1).)

After reviewing the parties' supplemental briefs, we agree with plaintiffs that they did not have an adequate opportunity to demonstrate triable issues of fact as to whether the alleged harassment was "because of . . . sex." Accordingly, although we have serious doubts whether such triable issues exist in this case, we leave the issue for another case and another day. (See *Folberg v. Clara G.R. Kinney Co.* (1980) 104 Cal.App.3d 136, 140 [163 Cal.Rptr. 426] ["if a point is not argued below by the moving party and the record does not establish that the opposing party could not have shown a triable fact issue had the point been raised, the appellant court cannot determine whether the trial court's decision was 'right' upon that point"]; *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70-71 [15 Cal.Rptr.2d 598] [it is unjust to deprive a party of the chance to demonstrate the existence of a triable issue on an issue not asserted by moving party as grounds for summary judgment].)

[10] In *Brennan v. Metropolitan Opera Ass'n, Inc.* (2d Cir. 1999) 192 F.3d 310, another case involving objectionable pictures posted in the workplace, the Second Circuit Court of Appeals also affirmed a summary judgment in favor of defendants. The court declined to decide whether posting sexually provocative photos constituted harassment "based on [plaintiff's] sex," but held that "a jury could not reasonably find the existence of a severe, pervasive atmosphere of sex-based hostility at the Met. These pictures and the one instance of sexual

not aid plaintiffs in establishing the conditions of their employment were substantially altered by the brief display of The Last Art Piece.

Indeed, other courts have found that even unwelcome sexual touching is insufficient to constitute severe or pervasive harassment when the incidents are isolated and there is no violence or threat of violence. (E.g., *Candelore v. Clark County Sanitation Dist.* (9th Cir. 1992) 975 F.2d 588, 590 (per curiam) [affirming summary judgment for defendant where "isolated incidents of sexual horseplay alleged by Candelore took place over a period of years and were not so egregious as to render Candelore's work environment 'hostile' "]; *Del Valle Fontanez v. Aponte* (D.P.R. 1987) 660 F.Supp. 145, 146-147, 149 [incident where defendant "pressed [plaintiff] against the door with his body" and plaintiff "felt defendant's erect sexual organ against her body" twice in a five-minute period was not severe or pervasive enough to create a hostile working environment]; *Saxton v. American Tel. & Tel. Co.* (7th Cir. 1993) 10 F.3d 526, 528, 534 [affirming summary judgment in favor of defendant where plaintiff was rubbed and kissed on one occasion and resisted an attempted groping on another].)

The nature of the alleged harassment in this case does not begin to approach the severity of rape or violent sexual assault or even milder forms of unwanted physical contact. None of the plaintiffs were physically touched or subjected to any sort of verbal abuse. Heuer and Dutro were not depicted in The Last Art Piece, and Herberg did not see the drawing until long after it had been taken down. Although Herberg and her relatives were understandably embarrassed and upset about the drawing, it is undisputed that the drawing was not intended to harass plaintiffs, but rather to make a point about representational art.[11] Moreover, CalArts's administrative personnel were uniformly mindful of plaintiffs' feelings, and made efforts to ameliorate the impact of the drawing during the time it was on display. Quite simply, no reasonable jury could conclude that the presence of The Last Art

---

banter alleged by the plaintiff, while they were arguably inappropriate in a work setting, do not rise to the level of actionable conduct." (*Id.* at p. 319.)

[11]In their declarations submitted in support of CalArts's motion for summary judgment, student artists Ariel Rosenberg and Jeremy Ringermacher explained the motivation for The Last Art Piece: "At CalArts, there is a tendency when art is critiqued to categorize a work as representational or conceptual. Representational artwork is an actual representation of the item depicted. Conceptual artwork goes beyond the actual item depicted and communicates additional ideas and concepts. During the time that I have attended CalArts, faculty and students have debated the impact of representational art versus conceptual art, and some people have characterized representational art as passé and incapable of provoking a strong response. Ringermacher and I decided to create a piece of art that mixed and confused these two concepts and evoked a critical response." In his letter of apology to Herberg, Rosenberg stated "I never intended to harm anyone."

Piece in the main gallery for 24 hours constituted severe harassment within the meaning of FEHA.[12]

## DISPOSITION

The judgment of the trial court is affirmed. CalArts is to recover its costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 13, 2002. Kennard, J., was of the opinion that the petition should be granted.

---

[12]The context in which the alleged harassment took place also supports our decision. (See *Fisher, supra,* 214 Cal.App.3d at pp. 609-610.) We see a vast difference between posting obscene cartoons in a men's room, as was done in *Bennett, supra,* 845 F.2d 104, and the display of The Last Art Piece in the designated gallery area at an art school. CalArts's noncensorship policy was widely distributed to both students and employees. In our view it was reasonable to expect that exhibitions of student artwork would, from time to time, include sexually explicit material. Although we reject CalArts's contention that its anticensorship policy and the First Amendment exempt it from the laws against sexual harassment, in this case the context of the display further militates against a finding of severe or pervasive harassment.