I respectfully dissent.
 Imagine this: three women, mother, daughter, and granddaughter, work at an art school. Two art students eager (as art students will be) to prove a point make an obscene drawing of school students, faculty, staff — including one of the women, the grandmother — engaged in sexual acts. The drawing is displayed in the school art gallery, where none of the women work, but they learn of it, and two of them, the daughter and granddaughter, go to the gallery to see it. The point the young artists want to make is that representational art can evoke a response, and indeed it does. All three women are very upset. However, their supervisors express sympathy and regret and encourage them to register a formal objection, and the whole school, up to and including the president, engages in formal and informal debate about the issue. The students take the drawing down after about 24 hours — one of them even apologizes. Is that conduct severe enough to create a workplace which is "permeated with `discriminatory intimidation, ridicule, and insult . . .'. . . that is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .'. . ."? (Harris v. Forklift Systems, Inc. (1993) 510 U.S. 17, 21 [126 L.Ed.2d 295, 114 S.Ct. 367], citation omitted.) Herberg v. CaliforniaInstitute of the Arts (2002) 101 Cal.App.4th 142 [124 Cal.Rptr.2d 1], says that as a matter of law it is not.
 Now imagine, instead, these facts: a patient arrives at a doctor's office, goes into the exam room where he or she is to undress and undergo an *Page 1488 
intimate physical examination, to find that the doctor has made an obscene drawing of patient and doctor and posted it in the room where the patient must wait, unclothed, vulnerable, and dependent. Is that "sexual advances, solicitations, sexual requests, demands for sexual compliance . . . other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender," that is unwelcome and severe? (Civ. Code, § 51.9, subd. (a)(2).) I think that is for a jury to decide, using the tools that jurors use — that is, common sense and a common sense of what words in the English language mean. I certainly do not see that rules developed for the workplace context can give the answer.
 Under the employment discrimination statutes, "`[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." [Citation.]. . . . [T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.' (Oncalev. Sundowner Offshore Services, Inc. (1998) 523 U.S. 75, 81-82 [140 L.Ed.2d 201, 118 S.Ct. 998]; see also Beyda v. City of Los Angeles
(1998) 65 Cal.App.4th 511, 517-518 [76 Cal.Rptr.2d 547].)" (Millerv. Department of Corrections (2005) 36 Cal.4th 446, 462 [30 Cal.Rptr.3d 797, 115 P.3d 77].) That is why Herberg reached the result it did. The "constellation of surrounding circumstances" relevant to Civil Code section 51.9 will be such that workplace definitions of "severe" will not apply. I believe that Civil Code section 51.9 must be interpreted based on the plain and ordinary meaning of the words used therein.
 Civil Code section 51.9 is not an employment discrimination statute. Those statutes prohibit, as unlawful employment practices, sexual discrimination in the terms, conditions, or privileges of employment, and sexual harassment in the workplace (Gov. Code, § 12940, subds. (a), (j)(1); 42 U.S.C. § 2000e-2(a)(1)), and a large body of case law has determined that prohibited conduct falls into two intertwined categories, quid pro quo sexual harassment and hostile work environment harassment. (Miller v. Department of Corrections, supra,36 Cal.4th at p. 462, fn. 6.) Civil Code section 51.9, in *Page 1489 
contrast, specifies the conduct which will give rise to a cause of action, and it does so without reference to quid pro quo or hostile environment harassment.
 Pair argues that Hughes could not establish a hostile environment or quid pro quo sexual harassment claim, as those terms are defined in cases arising under the employment discrimination statutes. In my view, she did not need to. At summary judgment, she was only required to establish the existence of triable issues of fact on the elements which are actually set out in the statute she is suing under.
 Nor do I see that the Legislature's use of a single phrase from the employment lexicon, "pervasive or severe" indicates an intent to import the employment cases into Civil Code section 51.9 jurisprudence. Instead, the Legislature told us that the statutes are independent. Civil Code section 51.9, subdivision (d) provides that, "The definition of sexual harassment and the standards for determining liability set forth in this section shall be limited to determining liability only with regard to a cause of action brought under this section."[1]
 When the evidence is construed in the light most favorable to the complaint, Pair indicated to Hughes that the trust would give her what she wanted if she was "nice" to him, meaning (and this is the meaning she understood) that if she engaged in sexual acts with him, he would use his influence with the trustees to change their decision regarding the summer rental, and would continue to use his influence in her favor in the future. If she did not, he would use his influence against her. When Hughes rejected his advances, Pair followed up with a brazen, obscene threat, made in a public place, in earshot of Hughes's son and his own, telling her that he would ensure her compliance "one way or another." Pair thus informed Hughes that her refusal would not put an end to his demands — indeed, that nothing would. He signaled his intention to continue to make, even to escalate, sexual advances and demands and to use his power over Hughes. He exhibited a complete abandonment of his fiduciary duty to Alex, indicating that he was willing to ignore the constraints of the law. He did so in public, in front of children, indicating a willingness to ignore all normal rules of civilized behavior. From this evidence, a reasonable jury could decide that Pair made *Page 1490 
"sexual advances, solicitations, sexual requests, demands for sexual compliance . . . or engaged in other verbal . . . conduct of a sexual nature or of a hostile nature based on gender. . . ." that were severe. There are triable issues of fact under Civil Code section 51.9.
 Thus, I would reverse.
[1]The legislative history does not change my conclusion. In 1999, the Legislature changed "persistent" to "pervasive" and expanded the scope of the statute, by, for instance, eliminating the requirement that the conduct continue after the plaintiff asks the defendant to stop. The Legislature did not make a Civil Code section 51.9 cause of action identical to a cause of action for employment discrimination, and did not evidence an intent that we should attempt to do so. *Page 1491