Filed 5/12/26  Cameron v. Balfour Beatty Construction CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MELINA CAMERON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BALFOUR BEATTY CONSTRUCTION, LLC, et al.,<br><br>Defendants and Appellants. | 2d Civ. No. B341877<br>(Super. Ct. No. 2024CUOE026155)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 15, 2026, be modified as follows:

On page 14, first full paragraph, after the first sentence, "We find *Casey*, *Doe, Liu*, and *Quilala* persuasive and adopt their reasoning," insert footnote 1 stating:

1. We reject appellants' claim that statements by "Senator Gillibrand (D-NY) – the [EFAA's] lead sponsor –" and two other senators show that "[t]he EFAA is solely meant to exempt sexual harassment and sexual assault ***claims*** from arbitration, not

entire lawsuits." " 'The best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous—that has a clearly accepted meaning in both legislative and judicial practice—we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.' " (*Huff v. DeKalb County, Ga.* (11th Cir. 2008) 516 F.3d 1273, 1280, quoting from *West Virginia University Hospitals, Inc. v. Casey* (1991) 499 U.S. 83, 98-99, superseded on other grounds by statute as recognized in *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 251.)

     Appellants' petition for rehearing is denied.
     There is no change in judgment.

---

YEGAN, A.P.J.        BALTODANO, J.        CODY, J.

Filed 4/15/26  Cameron v. Balfour Beatty Construction CA2/6 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MELINA CAMERON,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>BALFOUR BEATTY CONSTRUCTION, LLC, et al.,<br><br>　　Defendants and Appellants. | 2d Civ. No. B341877<br>(Super. Ct. No. 2024CUOE026155)<br>(Ventura County) |

　　Balfour Beatty Construction, LLC (Balfour), and two of its employees appeal the trial court's order denying their motion to compel arbitration of respondent Melina Cameron's complaint alleging one cause of action for sexual harassment and nine other causes of action.  Respondent was Balfour's former employee.  Before she began work, she signed an agreement requiring the arbitration of disputes relating to her employment.

　　The trial court concluded that none of the complaint's 10 causes of action was subject to compulsory arbitration pursuant to the federal Ending Forced Arbitration of Sexual Assault and

Sexual Harassment Act (EFAA). (9 U.S.C. §§ 401–402.) "In general terms, the EFAA renders arbitration agreements unenforceable at the plaintiff's election in sexual assault and sexual harassment cases that arise or accrue on or after March 3, 2022, the EFAA's effective date." (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 559 (*Doe*).)

Appellants contend the EFAA is inapplicable because respondent failed to adequately state a claim for sexual harassment. If the EFAA applies to the cause of action for sexual harassment, appellants argue that the trial court erroneously denied their motion to compel arbitration as to the other nine causes of action. We affirm.

*Respondent's Complaint*

Respondent's complaint alleged: respondent is an African-American woman. In January 2022 she was hired by Balfour "as an assistant superintendent of a large construction project." "During her employment . . . , [she] was subjected to horrific racial, gender, and sexual harassment[,] . . . racial and gender discrimination[,] . . . and apparent workplace violence . . . . She engaged in protected activity by making protected complaints and was ultimately terminated in retaliation for the same."

The complaint consisted of 10 causes of action: (1) hostile work environment sexual harassment under the state Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.); (2) hostile work environment gender harassment under the FEHA; (3) hostile work environment race harassment under the FEHA; (4) gender discrimination under the FEHA; (5) race discrimination under the FEHA; (6) retaliation for engaging in protected activity under the FEHA; (7) failure to prevent harassment, discrimination, and retaliation under the FEHA; (8)

2

whistleblower retaliation in violation of Labor Code section 1102.5, subdivision (b); (9) violation of the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7); and (10) violation of the Tom Bane Civil Rights Act (*id.*, § 52.1).

The first cause of action for sexual harassment was against Balfour and its Assistant Senior Superintendent, Joe Wandolowski, who was respondent's direct supervisor. The first cause of action alleged: on May 1, 2023, a safety supervisor advised Wandolowski "that there was 'extremely offensive graffiti' in the temporary toilets on the site known as porta-potties." Wandolowski told the safety supervisor that the graffiti "'had been there for months' and . . . that he would have it painted over. [The safety supervisor] responded in words to the effect of 'you don't understand . . . it's a big deal . . . if it's reported to the EEOC [Equal Employment Opportunity Commission], there could be huge repercussions.' " Respondent "immediately learned about this conversation and went into the porta-potties to see for herself. . . . [S]he discovered . . . : (1) Racist tropes and diatribes against African-American people and Hispanics; (2) Sexual drawings of women and derogatory references to women; and (3) Sexual and racist drawings and references to [respondent] along with threats to do her physical harm."

Photographs of the obscene graffiti were attached to the complaint as Exhibit A. Some of the graffiti specifically referred to respondent. For example, the graffiti included the following abusive language: (1) "fuck Mel" (respondent's first name is Melina); (2) "Mel can swallow my kids," followed by illegible, scratched-out writing and then "fuck you bitch ass cunt fuck pussy shit fuck"; (3) "I need Mel's pussy," followed by "me too"; and (4) "Mel fuck ya u dumb lame ass bitch."

3

The graffiti also included drawings of (1) "Mel" naked with a penis instead of a female sex organ, (2) "Mel's" face with a penis instead of a nose, and (3) a naked man whom someone had labeled as "Mel."

The complaint continued: "[O]n or about January 5, 2023, Balfour management . . . had been notified of some of the graffiti images. . . . Wandolowski had himself used some of those temporary toilets with the graffiti images and had done nothing about it. [Respondent] herself had viewed some of the graffiti on occasions prior to May 1, 2023, *but she had not seen those graffiti images that were racial, sexual, and threatening violence to her until she became aware of the Safety Supervisor's notification to . . . Wandolowski.*"

A staff meeting of Balfour employees, including respondent, occurred about two days after the safety supervisor had discovered the graffiti. "The issue of the graffiti on the temporary toilets came up in the meeting. . . . Wandolowski, in a laughing manner, asked what was going to be done with the graffiti in the temporary toilets, calling the graffiti 'artistic' and 'poetry' all of which elicited a few laughs. [Respondent] was mortified, humiliated, and terrified since she was the only African-American working in the field and several of the graffiti images targeted her personally."

During the staff meeting, "it was mentioned that 'high profile' people, including, but not limited to the Mayor of the City of Oxnard were going to attend [a] special event [at the project]. Rather than remove the graffiti, it was decided to lock up the porta-potties for the event."

4

In their motion to compel arbitration, appellants argued that respondent "*voluntarily* 'went into the porta-potties to see for herself,' proving that her exposure to the graffiti was not unwelcome." In reply to this argument, respondent declared under penalty of perjury: "Balfour claims my sexual harassment and gender harassment causes of action have no merit because I purportedly voluntarily exposed myself to the graffiti in the porta-potty toilets. This claim . . . is ridiculous. As the Assistant Superintendent of the entire project, I was **required** as part of my job duties to check the porta-potty toilets for damage and graffiti and was required to report violations of the law and the company's HR [Human Resources] policies to management. Also, I had to use the porta-potty toilets that were utilized by all workers on the project, as there were no other restrooms available."

### *Trial Court's Ruling*

Based solely on the EFAA, the trial court denied the motion to compel arbitration. It explained: "The Court cannot compel arbitration of [respondent's] claims because they are all related to the adequately pled sexual harassment dispute. . . . And the allegations of the complaint and [respondent's] declaration . . . state facts sufficient to support the sexual harassment cause of action." In support of its ruling, the court cited *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791 (*Liu*).

### *The EFAA*

"In 2022, Congress amended the [Federal Arbitration Act] by adopting the EFAA. In relevant part, the EFAA provides: 'Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment

dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.' (9 U.S.C. § 402(a).)  A ' "sexual harassment dispute" ' is 'a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.' (*Id.*, § 401(4).)" (*Doe, supra*, 105 Cal.App.5th at pp. 564-565.)  "An issue as to whether [the EFAA] applies with respect to a dispute shall be determined under Federal law."  (9 U.S.C. § 402(b).)

*Standard of Review*

"In general, we review a ruling on a petition to compel arbitration for an abuse of discretion.  [Citation.]  But when, as here, the ruling presents a pure question of law (whether the EFAA applies and preempts [appellants'] motion to compel), we review the trial court's order de novo."  (*Casey v. Superior Court* (2025) 108 Cal.App.5th 575, 583 (*Casey*).)

*Respondent Adequately Stated*
*a Claim for Sexual Harassment*

Appellants contend the EFAA is inapplicable because respondent failed to adequately state a claim for sexual harassment in the first cause of action.  There is a split of authority as to the standard for determining whether a claim for sexual harassment has been adequately pleaded under the EFAA.  Some cases conclude that the claim must be merely "nonfrivolous."  Other cases require that the claim be "plausible."  (See *Thomas v. Pooh Bah Enterprises, Inc.* (N.D. Ill., July 24, 2025, No. 25-CV-77) 2025 U.S.Dist.LEXIS 141753, at *8-12, [2025 WL 2084159, at *3-4].)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6

reasonable inference that the defendant is liable for the misconduct alleged.  [Citation.]  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678; see also *Sonoiki v. Harvard University* (1st Cir. 2022) 37 F.4th 691, 703 [" 'Plausible . . . means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense' "].)

We need not determine which standard applies. Irrespective of whether the claim must be plausible or merely nonfrivolous, the first cause of action adequately stated a claim for sexual harassment.

The first cause of action alleged sexual harassment under state law, i.e., the FEHA.  "[T]o establish liability in a FEHA hostile work environment sexual harassment case, a plaintiff employee must show she was subjected to sexual advances, conduct, or comments that were *severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment.*  [Citations.]  Although annoying or 'merely offensive' comments in the workplace are not actionable, conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment is unlawful, even if it does not cause psychological injury to the plaintiff." (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*).)

"[T]he existence of a hostile work environment depends upon 'the totality of the circumstances.'  [Citation.] . . . ' "[A] sexually objectionable environment must be both objectively and

7

subjectively offensive. . . .” ’  Therefore, ‘a plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail . . . if a reasonable person . . . , considering all the circumstances, would not share the same perception.’ ”  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1044 (*Hughes*).)

“ ‘ “[T]he prohibition against sexual harassment includes protection from a broad range of conduct” ’ . . . .  Besides unwanted sexual advances, ‘prohibited harassment includes “verbal, physical, and visual harassment. . . .”  [V]erbal harassment may include epithets, derogatory comments, or slurs on the basis of sex; . . . visual harassment may include derogatory posters, cartoons, or drawings on the basis of sex.’ ”  (*Carranza v. City of Los Angeles* (2025) 111 Cal.App.5th 388, 400-401.)  “On the other hand, a hostile work environment sexual harassment claim is not established where a supervisor or coworker simply uses crude or inappropriate language in front of employees or draws a vulgar picture, without directing sexual innuendos or gender-related language toward a plaintiff or toward women in general.”  (*Lyle*, *supra*, 38 Cal.4th at p. 282.)  “Generally, . . . sexual conduct that involves or is aimed at persons other than the plaintiff is considered less offensive and severe than conduct that is directed at the plaintiff.”  (*Id.* at p. 284.)

Here, some of the obscene graffiti was specifically directed at respondent, referring to her as “Mel.”  In *Bennett v. Corroon & Black Corp.* (1988) 845 F.2d 104, similar graffiti was posted in the public men’s room of an office building where the plaintiff was employed.  She was informed of the “obscene cartoons bearing her name.”  (*Id.* at p. 105.)  The court concluded, “Any reasonable person would have to regard these cartoons as highly offensive to a woman who seeks to deal with her fellow employees

8

and clients with professional dignity and without the barrier of sexual differentiation and abuse.  This is a perfect matrix to grow the hostile environment subjecting a woman to the discriminatory intimidation, ridicule, and insult which Title VII [of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)] protects against." (*Id*. at p. 106.)  "Title VII prohibits certain forms of employment discrimination, including sexual discrimination." (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1036.)  In " ' "interpreting California's FEHA, California courts often look for guidance to decisions construing federal antidiscrimination laws, including title VII of the federal Civil Rights Act of 1964." ' " (*Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268, 282.)

Appellants argue: "[Respondent] asserted one cause of action for harassment based on sex.  However, the allegations supporting this claim are virtually nonexistent.  She merely claims that she witnessed offensive graffiti in the portable toilets on a single occasion.  She even admits to voluntarily entering the portable toilets – *on purpose* – to see for herself.  In other words, the 'conduct' [respondent] alleges was isolated, and was neither a 'concerted pattern' nor 'unwelcome.'  [Respondent] has therefore not alleged conduct constituting a sexual harassment dispute."  Appellants characterize respondent's sexual harassment cause of action as "a single allegation of self-inflicted exposure to offensive graffiti."

"There is no recovery 'for harassment that is occasional, isolated, sporadic, or trivial.' " (*Hughes, supra,* 46 Cal.4th at p. 1043.)  If the graffiti had been recently discovered by management, appellants would have had a stronger case that the sexually harassing conduct was "isolated."  But according to the

9

complaint, respondent's supervisor, Wandolowski, told the safety supervisor that the graffiti "'had been there for months.'" Wandolowski knew about the offensive graffiti but failed to take any action to remove it. By allowing the graffiti to remain in place for months, he arguably condoned it and contributed to respondent's sexual harassment. "[U]nder the FEHA, an employer is strictly liable for *all* acts of sexual harassment by a supervisor." (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1042.) Moreover, at a staff meeting attended by respondent, Wandolowski made light of the graffiti by referring to it "in a laughing manner" as " 'artistic' and 'poetry.' "

Thus, the sexual harassment may reasonably be viewed not as an isolated incident, but as conduct that continued during the months that management did nothing about the graffiti. Because respondent was aware of management's failure to act, she pleaded a plausible claim of sexual harassment *severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment.* " (*Lyle, supra*, 38 Cal.4th at p. 283.)

That respondent voluntarily entered the porta-potties to view the graffiti does not mean, as appellants claim, that her exposure to the graffiti was "self-inflicted" and not "'unwelcome.'" Respondent declared under penalty of perjury, "As the Assistant Superintendent of the entire project, I was **required** as part of my job duties to check the porta-potty toilets for damage and graffiti . . . ."

Appellants argue that "*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142 [(*Herberg*)] is instructive, if not controlling." But *Herberg* is clearly distinguishable. There, the

10

plaintiff was an employee of the California Institute of the Arts (CalArts). Two students "were permitted to exhibit their own creative work as part of an end-of-the-year show at CalArts's main gallery." (*Id.* at p. 146.) The work "depicted [plaintiff] in a vulgar and sexually oriented drawing . . . ." (*Id.* at pp. 144-145.) The drawing was exhibited for approximately 24 hours. Plaintiff sued CalArts for sexual harassment under the FEHA.

The appellate court affirmed the trial court's order granting CalArts's motion for summary judgment. The appellate court concluded that the display of the offensive drawing "for 24 hours did not constitute severe or pervasive harassment because of sex as a matter of law." (*Herberg*, *supra*, 101 Cal.App.4th at p. 150.) The court explained that the plaintiff was not "subjected to any sort of verbal abuse," she "did not see the drawing until long after it had been taken down," and "the drawing was not intended to harass plaintiff[], but rather to make a point about representational art. Moreover, CalArts's administrative personnel were uniformly mindful of plaintiff['s] feelings, and made efforts to ameliorate the impact of the drawing during the time it was on display." (*Id.* at p. 153.)

In contrast to *Herberg*, the graffiti here subjected respondent to verbal abuse, management knowingly allowed it to remain in place for months, not just 24 hours, and respondent saw the graffiti before it was removed. The graffiti had nothing to do with "representational art." (*Herberg*, *supra*, 101 Cal.App.4th at p. 153.) Furthermore, management was not "mindful of [respondent's] feelings." (*Ibid.*) In respondent's presence, Wandolowski referred to the graffiti as "'artistic' and 'poetry.'"

11

*The Trial Court Did Not Err in Denying the Motion*
*to Compel Arbitration as to all 10 Causes of Action*

The EFAA provides, "[N]o predispute arbitration agreement . . . shall be valid or enforceable with respect to *a case* which is filed under . . . State law and *relates to the . . . sexual harassment dispute*." (Italics added.) (9 U.S.C. § 402(a) (section 402(a).) Appellants assert that, even if the first cause of action adequately pleaded a claim of sexual harassment, the trial court erroneously refused to compel arbitration as to the remaining nine causes of action "that are unrelated to sexual harassment." But the EFAA does not say that each cause of action must relate to the sexual harassment dispute. It says that the "case" must so relate.

Appellants are asking us to rule contrary to a line of California cases holding "that where a plaintiff's lawsuit contains at least one claim that fits within the scope of the EFAA, 'the arbitration agreement is unenforceable as to all claims asserted in the lawsuit.' " (*Casey, supra,* 108 Cal.App.5th at p. 588; accord, *Doe, supra,* 105 Cal.App.5th at p. 577.) The rationale for this holding was considered at length in *Liu, supra,* 105 Cal.App.5th at pp. 802-807. *Liu* explained: "[T]he key word in section 402(a) is 'case.' The common meaning of the word, in the context of litigation, is an action or suit." (*Id.* at p. 802.) "[O]ne cannot reasonably interpret section 402(a) as invalidating an arbitration agreement only with respect to certain claims within a case. The term Congress chose – 'case' – is different from the term 'claim.' " (*Id.* at p. 803.) "If Congress had intended the result [defendants] seek[], it would have used the term 'claim' instead of 'case' (saying something like no arbitration agreement 'shall be valid or enforceable with respect to a . . . <u>claim</u> which is

12

filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute'), or alternatively stated that the arbitration provision would be unenforceable 'only to that portion of the case related to the sexual harassment dispute.' Congress did not use such language, and we 'lack the power to rewrite a statute to make it conform to a " ' " 'presumed intention' " ' " which is not expressed in the statute itself. . . .' " (*Ibid*.)

*Liu* observed that its interpretation of section 402(a) will promote the efficient administration of the EFAA: "Allowing a plaintiff 'alleging conduct constituting a sexual harassment dispute' [citation] to opt out of arbitration for their entire case avoids the potential for inefficiency in having separate proceedings in court and an arbitration forum, and the related additional burden placed on the parties of having to litigate claims in both a court proceeding and an arbitration. In addition, having a clear-cut rule that can be easily applied allows courts to avoid making the sometimes-difficult determination, particularly at the pleading stage, whether a given claim sufficiently overlaps with allegations of sexual harassment." (*Liu*, *supra*, 105 Cal.App.5th at p. 804.)

The most recent California case interpreting section 402(a) is in accord with *Casey*, *Doe*, and *Liu*: "[I]t is no surprise that every published California decision to address this issue has concluded that, once properly invoked, the EFAA renders an arbitration agreement unenforceable as to the *entire case*, not merely the sexual harassment claim." (*Quilala v. Securitas Security Services USA, Inc.* (2025) 117 Cal.App.5th 75, 88 (*Quilala*).) *Quilala* concluded, "As all of Quilala's claims stem from the same employment relationship and his treatment by

defendants, his case 'relates to' his sexual harassment allegations within the meaning of section 402(a) of the EFAA." (*Id.* at 90.)

We find *Casey*, *Doe, Liu*, and *Quilala* persuasive and adopt their reasoning. "As all of [respondent's] claims stem from the same employment relationship and [her] treatment by [appellants], [her] case 'relates to' [her] sexual harassment allegations within the meaning of section 402(a) of the EFAA." (*Quilala*, *supra*, 117 Cal.App.5th at p. 90.)

*Disposition*

The order denying appellants' motion to compel arbitration is affirmed. Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

14

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Ogletree, Deakins, Nash, Smoak & Stewart and Spencer C. Skeen, Nikolas T. Djordjevski, Maryam Rastegar, Danielle J. Kaufman, for Defendants and Appellants.

Law Offices of Joel W. Baruch and Joel W. Baruch, for Plaintiff and Respondent.