Filed 10/16/13  El Cajon Luxury Cars v. Toyoto Motor CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EL CAJON LUXURY CARS, INC., <br><br>    Cross-complainant and Appellant, <br><br>      v. <br><br> TOYOTA MOTOR CORPORATION et al., <br><br>    Cross-defendants and Respondents. | G047010 <br><br> (Los Angeles County Super. Ct. No. JCCP4621; San Diego County Super. Ct. No. 37-2010-00086718) <br><br> O P I N I O N |

         Appeal from a judgment of the Superior Court of Los Angeles, Anthony J. Mohr, Judge.  Affirmed.

         Willis Depasquale, Larry N. Willis, Shane M. Biornstad, Yvette N. Siegel; Weinberg Wheeler Hudgins Gunn & Dial, Earl W. Gunn, Frederick N. Sager, Jr., Mark R. Johnson, and Shawn D. Scott for Cross-complainant and Appellant.

         Bowman and Brooke, Vincent Galvin, Anne O. Hanna; Bingham McCutchen, Frank M. Hinman, Robert A. Brundage, and Nicolette L. Young for Cross-Defendants and Respondents.

This case arises from a fatal automobile accident caused when a Lexus ES 350 (Lexus ES), accelerated out of control and reached speeds in excess of 100 miles per hour before crashing, rolling several times, and bursting into flames. The driver, Mark Saylor, a California highway patrolman who was highly trained in driving, called 911 Emergency and explained he had tried everything to stop the vehicle but the "'accelerator stuck'" and there were "'no brakes.'" He and three family members perished in the crash. The Lexus ES had been loaned to the Saylor family while their own car was being repaired by the dealership, El Cajon Luxury Cars, Inc., doing business as Bob Baker Lexus (Baker).

Relatives of the deceased filed a lawsuit against Baker and the car's manufacturer, Toyota,[1] claiming the car was defective. They also sued Baker for negligence in maintaining and servicing the vehicle. It was later discovered the floor mat in the driver's side foot well was designed for a Lexus sports utility vehicle (a Lexus RX 350/400h) rather than the Lexus ES. In response to this accident and others, Toyota recalled millions of vehicles, redesigned the floor mats, and added brake override systems to its cars.

Baker filed a cross-complaint against Toyota, seeking defense costs and indemnification for any liability attributable to the defective design and manufacturing of the Lexus ES. Toyota paid plaintiffs $10 million to settle the product liability claims. After the trial court determined the settlement was made in good faith, plaintiffs amended the complaint, leaving only a claim for negligence against Baker.

This appeal follows the trial court's decision to grant Toyota's summary judgment motion based on the amended complaint, asserting the claims in Baker's

---

[1]     The Toyota defendants include Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Technical Center U.S.A., and Toyota Technical Center Japan (collectively referred to as Toyota).

cross-complaint seeking indemnity must fail as a matter of law.  On appeal, Baker asserts the court erred in eliminating the indemnity claim because it:  (1) should not have determined disputed material issues such as the cause of the car crash; (2) misinterpreted Baker's dealer agreement with Toyota; (3) considered inadmissible evidence as well as untimely filed evidence and arguments; and (4) misinterpreted statutory indemnity provisions contained in Vehicle Code section 11713.13.[2]

We conclude the trial court properly granted summary judgment.  The court correctly determined Toyota did not have a duty to defend or indemnify the dealership in what was a purely negligence tort action.  We note, this ruling will not preclude Baker from arguing at trial Toyota was entirely to blame for the accident because the court did not decide the issue of causation in the negligence action.  Moreover, there is no danger the jury will award damages against Baker arising from Toyota's alleged product defects.  Those claims have already been settled in good faith.  Accordingly, at trial the jury must consider whether Baker's alleged negligence, apart from the alleged defects with the car, caused or contributed to plaintiffs' injuries.  It cannot award damages against Baker relating to product liability.

I

A.  *The Underlying Facts*

In August 2009, Baker loaned Saylor a Lexus ES while Saylor's car was being serviced.  Saylor, a 45-year-old California highway patrol officer, finished his shift and picked up his wife, their 13-year-old daughter, and his wife's brother, in the loaned Lexus ES.  As they drove on Interstate 125, Saylor called 911 Emergency and stated he was unable to stop the vehicle.  Saylor told the 911 dispatcher the accelerator was stuck, the car was traveling 120 miles per hour, the freeway was ending in half a mile, and the brakes would not stop the car.  Saylor reached the end of the freeway, and the Lexus ES

_____

[2] All further statutory references are to the Vehicle Code, unless otherwise indicated.

3

struck another car in the intersection, broke through a fence, and rolled several times into a field where it burst into flames. Everyone in the car died.

B. *The Original Lawsuit & The Settlement Agreement*

The parents and grandparents of the decedents (plaintiffs), filed a wrongful death lawsuit against Toyota and Baker. They sought noneconcomic damages for the loss of "love, companionship, comfort, care, assistance, protection, affection, society and moral support[.]"

Baker filed a cross-complaint against Toyota alleging claims for (1) contribution, (2) equitable indemnity, (3) implied indemnity, and (4) express indemnity. A few months later, Baker filed a first amended cross-complaint, adding causes of action for violations of section 11713.13 and Business and Professions Code section 17200. These claims relate to Toyota's refusal to indemnify Baker in plaintiffs' lawsuit.

In 2010, Toyota settled with plaintiffs, paying them a total of $10 million. Under the terms of the settlement agreement, plaintiffs agreed to dismiss all claims against Toyota, and all claims against Baker, except for "reserved claims." (Original capitalization omitted.) The agreement defined "reserved claims" as follows: "Includes only claims of alleged independent negligence against defendant dealer [Baker]. [Reserved claims] does include all issues of negligence against [Baker] arising from the death of the [d]ecedents, including but not limited to Baker's alleged negligence arising from its alleged improper maintenance, repair, or preparation of the [vehicle], and any alleged negligence in connection with the placement, replacement, fitting, use, selection or installation related to the floor mats in the [vehicle]. [Reserved claims] does not include any product liability related claims or causes of action regardless of whether stated as negligence, strict product liability, breach of any warranty, including any express, implied or certified used vehicle warranty, or failure to warn of any alleged product defect. [Reserved claims] does not include claims against [Baker] for bodily

4

injury, property damage, or breach of warranty caused solely by an alleged defect in design, manufacture or assembly of the [vehicle], or any alleged misrepresentations, misleading statements, unfair or deceptive trade practices of [Toyota]."

Plaintiffs agreed to file an amended complaint, asserting only a cause of action for negligence against Baker, relating to the placement, replacement, fitting, use, selection or installation of the floor mats in the vehicle.

Toyota filed a motion for judicial determination of a good faith settlement. It stated the parties had not engaged in formal discovery, but the basis of plaintiffs' claims against Toyota and Baker were as follows: The negligence claim against Baker related to evidence Baker improperly placed an oversized floor mat intended for a sports utility vehicle in the Lexus ES, Baker failed to properly clip the mat into the front driver's side, and Baker failed to act upon a report three days prior to the accident of the accelerator pedal getting stuck. Toyota stated the product defect allegations related to the lack of a brake override system, a defect in the electronic control throttle system, and an inadequate safety recall campaign in 2007. Toyota asserted Baker's independent negligence was a major cause of the accident, and Toyota's settlement represents a fair agreement of its potential proportionate liability. Toyota stated it "did all it reasonably could to protect the interests of [Baker] and negotiated a release of all product liability claims against [Baker] as well. . . . The only claim remaining is the negligence claim that from its inception has solely been asserted against [Baker]." (Underlined emphasis omitted.)

The court determined the settlement was made in good faith pursuant to Code of Civil Procedure section 877.6. The court dismissed Baker's claims against Toyota for "equitable comparative contribution or partial or comparative indemnity based on comparative negligence or comparative fault." It denied Baker's request for an allocation, credit, or offset for any part of the settlement amount between plaintiffs and Toyota "at this time for the reasons set forth in the briefs . . . . [Baker] may seek such

5

relief at time of trial if it so chooses." Baker's writ petition challenging the good faith determination was summarily denied and Baker does not challenge the determination on appeal.

In March 2011, plaintiffs filed their amended complaint against Baker, alleging one cause of action for negligence in the "maintenance, care and servicing" of the loaned Lexus ES. The complaint does not allege the vehicle was defective, or improperly designed or manufactured.

C. *The Summary Judgment Motion*

Toyota moved for summary judgment on Baker's cross-complaint. Baker filed an opposition, and Toyota filed a reply brief. After a continuance to allow for additional discovery, the parties submitted additional briefing and evidence.

As to Baker's first three causes of action based on comparative fault, equitable indemnity, and implied indemnity, the trial court held these claims were barred by Toyota's good faith settlement with plaintiffs of the product liability claims.

Baker's fourth cause of action alleged express contractual indemnity under the terms of its dealer agreement with Toyota (specifically Toyota Motor Sales, U.S.A., Inc.). The court determined the agreement's indemnity provision would only be triggered by a lawsuit arising out of an occurrence caused solely by a defect or failure to warn of a defect in a Lexus product. It concluded this provision would not apply to plaintiffs' negligence claims. The court also concluded the indemnity provision was not triggered because paragraph 5 of the dealer agreement expressly excluded coverage when the complaint alleges dealer misconduct, such as "improper or unsatisfactory service or repair[.]"

The trial court found in favor of Toyota on the statutory causes of action as well. Section 11713.13, subdivision (f), requires a manufacturer to indemnify a dealer for defense costs and any judgment on certain kinds of claims. The court concluded plaintiffs' negligence claims did not fall within the scope of this statute. Baker's

6

Business and Professions Code section 17200 claim was solely based on the alleged violation of the Vehicle Code, and therefore, was also found to lack merit.

## II

### A. *Summary Judgment Standard of Review*

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 (*Aguilar*).) The trial court properly grants a motion for summary judgment if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 843.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Id.* at p. 851.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Id.* at p. 850.) "We review the trial court's decision de novo, considering all evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

### B. *Toyota's Initial Burden of Production*

As noted above, the moving party bears the initial burden of production to make a prima facie case demonstrating no material issues of triable fact exist. (*Aguilar,*

7

*supra,* 25 Cal.4th at p. 850.)  "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial."  (*Id.* at p. 851.)  When the burden of proof at trial would be the civil standard, preponderance of the evidence, "if a defendant moves for summary judgment . . . he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not . . . ."  (*Ibid.*)

### i. First, Second & Third Causes of Action

In this case, we begin by noting there is no dispute Baker's first three causes of action for comparative fault, equitable indemnity, and implied contractual indemnity were barred by the trial court's determination Toyota's settlement with plaintiffs was in good faith.  Code of Civil Procedure section 877.6, subdivision (c), bars a joint tortfeasor's claims against the settling defendant "for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."  Indeed, the trial court dismissed these claims in its order ruling the settlement was made in good faith.

### ii. Fourth Cause of Action

Baker's fourth cause of action related to the interpretation of an express contractual indemnity provision.  Toyota presented undisputed evidence the dealership agreement's indemnity provision was not triggered by the allegations raised in plaintiffs' complaint.  Baker asserts the court misinterpreted the indemnity agreement.  We disagree.

Before we begin our analysis, a review of indemnity contract law is helpful.  "Parties to a contract . . .  may define therein their duties toward one another in the event of a third party claim against one or both arising out of their relationship.  Terms of this kind may require one party to *indemnify* the other, under specified circumstances, for moneys paid or expenses incurred by the latter as a result of such claims.  (See Civ. Code, § 2772 ["Indemnity is a contract by which one engages to save another from a legal

8

consequence of the conduct of one of the parties, or of some other person"].)  They may also assign one party, pursuant to the contract's language, responsibility for the other's *legal defense* when a third party claim is made against the latter.  [Citation.]" (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 551, fn. omitted (*Crawford* ).)

"As befits the contractual nature of such arrangements, but subject to public policy and established rules of contract interpretation, the parties have great freedom to allocate such responsibilities as they see fit.  [Citations.]  'When the parties knowingly bargain for the protection at issue, the protection should be afforded.'  [Citations.] Hence, they may agree that the promisor's indemnity and/or defense obligations will apply only if the promisor was negligent, or, conversely, even if the promisor was not negligent.  [Citations.]" (*Crawford, supra,* 44 Cal.4th at pp. 551-552.)

"In general, such an agreement is construed under the same rules as govern the interpretation of other contracts.  Effect is to be given to the parties' mutual intent ([Civ. Code,] § 1636), as ascertained from the contract's language if it is clear and explicit ([Civ. Code,] § 1638).  Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense.  [Citations.] [¶]  Though indemnity agreements resemble liability insurance policies, rules for interpreting the two classes of contracts do differ significantly.  Ambiguities in a policy of insurance are construed against the insurer, who generally drafted the policy, and who has received premiums to provide the agreed protection.  [Citations.]  In noninsurance contexts, however, it is the *indemnitee* who may often have the superior bargaining power, and who may use this power unfairly to shift to another a disproportionate share of the financial consequences of its own legal fault.  [Citations.]  [¶]  This public policy concern influences to some degree the manner in which noninsurance indemnity agreements are construed.  For example, it has been said that if one seeks, in a noninsurance agreement, to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault—protections beyond those afforded by the doctrines

9

of implied or equitable indemnity—language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee. [Citations.]" (*Crawford, supra,* 44 Cal.4th at p. 552.)

With these principles in mind, we examine the pertinent terms of Toyota's dealer agreement, containing an indemnity agreement, with Baker. The indemnity provisions are as follows:

"XVIII. DEFENSE AND INDEMNIFICATION [¶] A. DEFENSE AND INDEMNIFICATION BY DISTRTIBUTOR

"DISTRIBUTOR agrees to assume the defense of DEALER and to indemnify and hold DEALER harmless in any lawsuit naming DEALER as a defendant and involving any LEXUS Product when the lawsuit also involves allegation of:

"1. Breach of warranty provided by DISTRIBUTOR, bodily injury or property damage arising out of an occurrence allegedly caused solely by a defect or failure to warn of a defect in design, manufacture or assembly of a LEXUS Product (except for tires not manufactured by FACTORY), provided that the defect could not reasonably have been discovered by DEALER during the pre-delivery service of the LEXUS Product;

"2. Any misrepresentation or misleading statement or unfair or deceptive trade practice of DISTRIBUTOR; or

"3. Any damage to a LEXUS Product purchased by DEALER from DISTRIBUTOR that was repaired by DISTRIBUTOR and where DEALER had not been notified of such damage in writing prior to the delivery of the subject vehicle, part or accessory to a retail Customer; and

"Provided:

"4. That DEALER delivers to DISTRIBUTOR, in a manner to be designated by DISTRIBUTOR, within twenty (20) days of the service of any summons or

10

complaint, copies of such documents and requests in writing a defense and/or indemnification therein (except as provided in Paragraph (D) below);

"5. That the complaint does not involve allegations of DEALER misconduct, including but not limited to, improper or unsatisfactory service or repair, misrepresentation, or any claim of DEALER's unfair or deceptive trade practice;

"6. That the LEXUS Product which is the subject of the lawsuit was not altered by or for DEALER;

"7. That DEALER agrees to cooperate fully in the defense of such action as DISTRIBUTOR may reasonably require; and

"8. That DEALER agrees that DISTRIBUTOR may offset any recovery on DEALER's behalf against any indemnification that may be required hereunder."

In its motion for summary judgment, Toyota asserted and the trial court agreed paragraph (1) provided for indemnity in any lawsuit involving bodily injury and was limited to actions where the injury is "caused solely by a defect or failure to warn of a defect in design, manufacture or assembly of a Lexus Product . . . ." (Italics omitted.) In neither the original complaint nor the amended complaint was it ever alleged damages were "caused solely" by a defect. Both complaints also contained allegations Baker independently negligently maintained and serviced the vehicle and this conduct caused damages.

In addition, paragraphs (5) and (6) clarified Toyota would provide a defense or indemnity "provided" the complaint "does not involve allegations of *Dealer* misconduct, including but not limited to, improper or unsatisfactory service or repair" and the vehicle "which is the subject of the lawsuit was not altered by or for *Dealer*." There is no dispute the original and operative complaints included allegations of "dealer misconduct." The original complaint specifically alleged Baker breached its duty of care regarding the "maintenance, care and servicing" of the vehicle. In its motion, Toyota also presented evidence the vehicle was "altered by or for *Dealer*" because Baker

11

replaced the floor mats provided by the manufacturer for use in the Lexus ES with mats intended for a larger Lexus SUV.

On appeal, Baker insists the court's interpretation of the indemnity provision was incorrect. It focuses on "[p]aragraph (1) of the indemnity agreement [that] provides Toyota will assume the defense and indemnify and hold Baker harmless in any lawsuit naming Baker as a defendant and involving any Lexus product when the suit involves allegations of bodily injury or property damage arising out of an occurrence allegedly caused solely by a defect or failure to warn of a defect design, manufacture or assembly of a Lexus product." Baker maintains, "Plaintiffs originally alleged an 'either/or' scenario wherein their damages were *either* caused exclusively by Toyota's defective product *or* exclusively by Baker's actions in maintaining and servicing the vehicle. In other words, under at least one of [p]laintiffs' two original theories, [p]laintiffs' decedents' 'bodily injury . . . [arose] out of an occurrence allegedly caused solely by a defect . . . in design, manufacture or assembly of' the Lexus ES 350 that . . . Saylor was driving when he and his family died. Accordingly, as required by the indemnity provisions of the [d]ealer [a]greement, Toyota is required to defend and indemnify Baker in this lawsuit." (Fn. omitted.) Baker adds it is "of no consequence" that Toyota settled with plaintiffs and the complaint was amended to no longer assert product defects. It asserts the original complaint is controlling and triggered the indemnity provision.

Contrary to Baker's contention on appeal, the above argument does not appear to challenge the court's interpretation of the indemnity provision, but rather its reading of the original complaint. We have carefully reviewed the complaint and found nothing to support Baker's assertion plaintiffs alleged an "either/or" scenario in which damages were exclusively caused *either* by a defective vehicle *or* entirely by Baker's independent negligence in maintaining and servicing the vehicle. The words "exclusive," "entirely," or "either/or" are not contained in the complaint. To the contrary, the product

12

liability claim simply alleged damages were "a direct and proximate result of the defective" Lexus. The negligence claim against Baker incorporated "each and every allegation contained in the [product liability claim]" and asserted damages were "a direct and proximate result of the negligent acts and omissions" of Baker. There is no language suggesting the theories of recovery were mutually exclusive or represented alternate theories of recovery.

And this is not a case in which the two causes of action were inherently contradictory or exclusive. As suggested by Baker in the opening brief, plaintiffs' theory focused on floor mat entrapment of the accelerator pedal, which could be caused by a combination of having the wrong floor mat *and* the design defect of having inadequate clearance between the vehicle's floor pan and accelerator pedal. As Baker suggests in its opening brief, one of plaintiffs' theories is Baker's negligence *in combination with* a design defect caused the accident. This type of allegation did not trigger the indemnity clause that expressly required allegations the damages were "caused solely by a defect." By its plain meaning, a lawsuit alleging defects in combination with other causes would not trigger the duty to indemnify.

After settling the products liability claims, plaintiffs modified their claim to allege negligence, *in the absence* of a design defect, caused damages. As noted earlier, this type of lawsuit would not trigger the indemnity clause in paragraph (1) or any other paragraph in the indemnity agreement.

In finding no duty to indemnify, the trial court also cited to paragraph (5), which expressly excludes from coverage lawsuits involving allegations of dealer misconduct, including the improper service or repair of a vehicle. Baker claims the indemnity agreement covers three types of lawsuits, contained in paragraphs (1), (2), and (3): Paragraph (1) covers injuries caused by product defects. Paragraph (2) covers lawsuits based on Toyota's misrepresentations. And paragraph (3) covers lawsuits arising from damages caused by repaired products purchased from a distributor when the

13

dealer was not notified of repaired damage. Paragraphs (4) through (8) explain the circumstances that limit indemnity. Baker reads the agreement to say the limiting paragraphs, (4) through (8), only modify paragraph (3). This argument is based on the placement of a semicolon at the end of paragraph (3), followed by the word "and" and then inclusion of a new, unnumbered paragraph with the word "provided." Baker asserts paragraphs (4) through (8) are the "provided" qualifications for indemnification involving a lawsuit only described in paragraph (3).

This theory of construction ignores the basic rule the agreement must be read as a whole. Paragraphs (1) and (2) also end with semicolons, punctuation commonly used to join together a series of statements that do not stand alone as separate sentences. That paragraphs (1), (2), and (3) should be read as series is also supported by the word "or" following paragraph (2). Baker was given coverage for lawsuits described in paragraph (1), paragraph (2), or paragraph (3), "and" these three separate promises of coverage were conditioned on the provisos contained in paragraphs (4) though (8). Like the trial court, we read paragraph (5) as restraining the operation of all three coverage paragraphs.

In any event, even if we assume for the sake of argument, none of the provisos contained in paragraphs (4) through (8) relate to paragraph (1), the cause of action still fails. As described above, paragraph (1) was not triggered because the lawsuit did not allege damages were "caused solely by a defect or failure to warn of a defect in design, manufacture or assembly of a Lexus Product . . . ." The phrase "caused solely" plainly and clearly limits the types of lawsuits covered. Because the complaint also contained the allegation Baker's negligence caused damages, the damages alleged in the plaintiffs' lawsuit were not "allegedly caused solely by a defect[.]" Therefore, indemnity under paragraph (1) was not triggered by plaintiffs' complaint.

14

*iii. Fifth Cause of Action*

Baker's fifth cause of action alleged a violation of section 11713.13, subdivision (f)(1)(A), which provides: "It is unlawful and a violation of this code for any manufacturer . . . licensed under this code to do, directly or indirectly through an affiliate, any of the following: [¶] . . . [¶] (f)(1) Fail, upon demand, to indemnify any existing or former franchisee and the franchisee's successors and assigns from any and all damages sustained and attorney's fees and other expenses reasonably incurred by the franchisee that result from or relate to any claim made or asserted by a third party against the franchisee to the extent the claim results from any of the following: [¶] (A) The condition, characteristics, manufacture, assembly, or design of any vehicle, parts, accessories, tools, or equipment, or the selection or combination of parts or components manufactured or distributed by the manufacturer or distributor."

The parties provided us with some instructive Legislative history relating to the enactment of section 11713.13. The bill to amend section 11713.1 and create section 11713.13 was sponsored by the California New Car Dealers Association in 2009, to address several concerns: (1) every other state had laws regulating the relationship between vehicle manufacturers and franchised dealers but California had not updated its rules for nearly a decade; (2) over the past 15 months over 170 new car dealerships had closed and there was a perceived need to provide protection and assistance to dealerships; and (3) "with major vehicle manufacturers seeking or contemplating bankruptcy protection, there is an urgent need to establish a statutory framework for dealing with issues that arise when a dealership goes out of business or its franchise is terminated." (Assem. Com. on Transportation, Rep. on Sen. Bill No. 424 (2009-2010 Reg. Sess.) as amended May 18, 2009, p. 4.)

The Senate and Assembly Committees reviewing the bill recognized in their reports that California "is one of only three states where the issues of termination assistance, dealerships with multiple franchises, and facility improvements, are not

15

addressed in statute. 'This bill brings California in line with the vast majority of other state requirements' . . . [and according to the sponsor] 'this bill is needed to ensure that facility requirements imposed by franchisors is adequate, that assistance for dealers upon termination, nonrenewal, or cancellation of a franchise are reasonable, and that dealers are *properly indemnified for actions of auto manufacturers or distributors that are beyond their control*.' Motorcycle dealers . . . also support this bill . . . declaring, '[t]hese reasonable requirements will make the treatment of motor vehicle dealers, who have fallen victim to the unfortunate and dire economic times . . . as fair as possible. These reasonable and common sense provisions will help to rebuild California's motor vehicle retail sales industry and fuel California's economic recovery.'" (See Assem. Com. on Transportation, Rep. on Sen. Bill No. 424 (2009-2010 Reg. Sess.) as amended May 18, 2009, p. 4, italics added.)

As summarized by the Assembly Committee on Transportation, "This bill sets out detailed procedures and delineates responsibilities of manufacturers and distributors in repurchasing and reimbursing dealers for their vehicle inventories and other items that are returned when a dealer no longer holds a franchise. The bill also specifies the rights of ongoing dealerships to carry competing lines of vehicles . . . . These provisions make several references to a standard of 'reasonableness.' Reasonableness is, of course, in the eye of the beholder. Nevertheless, the stakeholders in this effort believe this bill will provide them with the criteria . . . to resolve disagreements on these issues whenever they may arise." (Assem. Com. on Transportation, Rep. on Sen. Bill No. 424 (2009-2010 Reg. Sess.) as amended May 18, 2009, p. 4.) And as noted by another Assembly Committee's report, the legislation was specifically designed "to address the effects of the Chrysler bankruptcy, which, according to the sponsor, will result in 32 California dealers immediately losing their franchises." (Assem. Com. on Appropriations, Rep. on Sen. Bill No. 424 (2009 Reg. Sess.) as amended May 18, 2009, p. 2.)

16

The bill was enacted July 2, 2009, and due to an urgency designation, it was deemed to be effective immediately. The final version of Senate Bill No. 424 stated, "The distribution, sale, and service of new motor vehicles in the State of California vitally affects the general economy of this state and the public welfare. [¶] . . . [¶] It is the intent of this act to ensure that facility requirements imposed by franchisors are reasonable, that assistance for dealers upon termination, nonrenewal or cancellation of a franchise is adequate, and that dealers are *properly indemnified for actions of auto manufacturers or distributors that are beyond the control of dealers*." (Stats. 2009, ch. 12, § 1, subd. (d), italics added.)

To summarize, this emergency legislation was enacted with the purpose of ensuring dealerships received fair treatment from manufacturers in a climate of an extreme financial crisis with a rising and alarming number of manufacturer and dealer bankruptcies. The statute clarifies the manufacturer's or distributer's duty to indemnify will extend to "any existing former franchisee and the franchisee's successors and assigns . . . ." (§ 11713.13, subd. (f).) Stated another way, the statute mandates the existing duty to indemnify one dealership will apply equally to that dealership's successors and assigns. Moreover, the Legislature clarified a manufacturer's or distributer's bankruptcy will not extinguish its duty to indemnify franchisees from claims arising from how the vehicle is manufactured, assembled, or designed, i.e., product liability claims. Given the chaos and instability of the marketplace, this emergency legislation was sorely needed to protect the surviving dealerships in California from product liability claims, especially in light of the number of manufacturers, distributors, and other dealers going out of business.

Toyota argued, and the trial court agreed, Toyota complied with the provisions of section 11713.13, subdivision (f)(1)(a), which required Toyota to indemnify Baker if a third party lawsuit alleged product liability. As discussed earlier, Toyota paid plaintiffs $10 million for damages arising from their product liability claim, i.e., claims

17

relating to the "condition, characteristics, manufacture, assembly or design of" the Lexus ES. (§ 11713.13, sub. (f).) Thus, as required by the statutory scheme, Toyota paid plaintiffs for damages caused by the vehicle's defects that were beyond the control of the dealer. And as part of their good faith settlement, Toyota negotiated a release of plaintiffs' product liability claims against Baker, recognizing damages arising from such defects would also be beyond the control of the dealer. In this case, the jury cannot be permitted to hold Baker liable for any portion of the damages attributable to the vehicle's defective design. Plaintiffs have been paid those damages.

Contrary to Baker's contention on appeal, nothing in the statute suggests Baker should be indemnified for claims arising from actions that were not beyond its control, i.e., third party claims for damages arising from Baker's own negligence. Baker reads section 11713.13, subdivision (f), to say, "Baker need only show that Toyota's parts, the assembly of those parts, and/or the design of those parts related to the accident." We conclude Baker has misconstrued the scope of the statute.

Basic rules of statutory construction say we "'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977-978.) As discussed above, the Legislature clearly stated the purpose of the statute was to preserve the manufacturer's existing duty to indemnify regardless of whether the manufacturer, distributor, or franchisee has declared bankruptcy. The Legislature's goal was to protect dealers faced with product liability lawsuits, claiming damages that were out of the dealer's control and solely caused by the manufacturing, assembly, or design of the vehicle.

Baker's interpretation of the statute would essentially require Toyota to indemnify a dealer *anytime* Toyota's vehicle or parts related to an accident. As aptly noted by Toyota, if we were to read the statute as imposing this level of indemnification,

18

we would be making Toyota a de facto insurer for any dealer facing any injury claim relating to the dealer's repair of a vehicle. Indeed, anytime a dealer services or repairs a vehicle, the conduct necessarily *relates to* some part of the manufacturer's vehicle or parts. And if a dealer should negligently service or repair a vehicle, Baker is suggesting section 11713.13 mandates Toyota indemnify the dealer for misconduct that was clearly out of Toyota's control. This construction certainly does not comport with the stated intent of the Legislature but rather serves to defeat the general purpose of the statute: If manufacturers were required to indemnify dealers anytime their vehicles or parts related to an accident, without collecting premiums for essentially insuring the dealers, they would unfairly suffer financially. The statute was created to help California's economy and attempt to maintain the status quo for dealers in an unstable marketplace, not create a different financial crisis.

Baker insists that in dismissing Baker's statutory indemnity claim, the court impermissibly "made a factual finding that [use of] the floor mats . . . on the part of Baker caused the accident exclusive and independent of any other Lexus part. This is a physical impossibility." It explains the floor mats were a problem because they interacted with other parts of the vehicle that were defective. Baker concludes, "By granting summary judgment with regard to the Vehicle Code indemnity obligation of Toyota, the [t]rial [c]ourt erred in removing the crucial question of causation from the jury's consideration and deciding it as a matter of law or as a material undisputed fact." Nonsense.

In dismissing the statutory indemnity claim, the trial court did not consider or determine the factual question of causation in plaintiffs' case. It simply determined (1) Baker would not be held liable for product liability damages because plaintiffs had already been paid those damages via a good faith settlement with Toyota, and (2) the only claim remaining was for Baker's alleged independent negligence for which Toyota had

19

no statutory (or contractual) duty to indemnify.[3]  This ruling does not preclude Baker from arguing the issue of causation at trial.  Baker can present evidence and assert the only cause of the accident was the defective vehicle parts, i.e., product liability.  Alternatively, it may try to reduce its damages and assert the product design defects were the major contributing cause of the accident, and ask the jury to apportion what percentage of liability, if any, arises solely from Baker's separate negligence.

Consequently, the jury may ultimately determine Baker's conduct did not contribute to the accident or award damages attributable solely to Baker's negligence.  As required by section 11713.13, Baker will not be held liable for any actions of Toyota that were beyond Baker's control.  (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 (*DaFonte*) ["express purpose of Proposition 51 was to eliminate the perceived unfairness of imposing 'all the damage' on defendants who were 'found to share [only] a fraction of the fault[]'"]; *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 64-65 [non-settling defendant liable for own 35 percent share of noneconomic damages but not settling defendant's 45 percent share].)  Proposition 51 (Civ. Code, § 1431.1, subd. (b)), protects Baker because it mandates "a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit. [Citation.]"  (*DaFonte, supra,* 2 Cal.4th at p. 603.)

---

[3]  We note Baker argues the trial court ruled on the causation issue based on a portion of the hearing transcript in which the court commented Toyota did not put the wrong floor mat in the vehicle, stating, "I'm not sure who did, but it wasn't Toyota." However, after carefully reading the transcript, we conclude it is clear the court never said Baker installed the floor mat or that the mat caused the accident.  More importantly, the written statement of decision prepared after the hearing does not contain any ruling relating to the merits of plaintiffs' negligence action or the cause of the accident. Summary judgment on the indemnity claims were granted for clearly stated reasons discussed at length in this opinion.  We deem this argument a red herring.

## iv. Sixth Cause of Action

Baker's sixth cause of action alleged a violation of Business and Professions Code section 17200 based on Toyota's refusal to indemnify Baker under the Vehicle Code. For the reasons already discussed, we conclude the trial court properly granted summary judgment on the section 11713.13 claim. Because the sixth cause of action is dependent on the Vehicle Code claim, we conclude summary judgment of this claim was also properly granted.

## v. Consideration of Supplemental Arguments and Evidence

Baker recognizes the trial court requested supplemental briefing "on the narrow issue of whether there had been alterations" to the Lexus ES involved in the crash. This evidence related to the court's consideration of the contractual indemnity clause, limiting the duty to indemnify to cases where the Lexus product "was not altered by or for the dealer" (paragraph 6 of the dealer agreement). Baker maintains the court erred in considering Toyota's supplemental evidence and arguments, submitted one week before the hearing. We disagree.

As aptly noted by Toyota, Baker also submitted additional evidence and legal argument on December 7, 2011, seven days before the December 14 hearing. Baker had a week to respond to Toyota's supplemental evidence, present argument about the evidence at the hearing, or ask for a continuance. (See *Weiss v. Chevron* (1988) 204 Cal.App.3d 1094, 1098 ["court should consider all admissible evidence of which the opposing party has had notice and the opportunity to respond"].) At the hearing, Baker simply objected to Toyota's supplemental brief on the grounds it contained new issues and facts. However, Baker did not request a continuance and failed to identify any additional evidence or argument it wished to provide.

On appeal, Baker asserts it would have submitted evidence showing: (1) it is disputed whether Baker installed wrong floor mats in the vehicle; (2) Baker trained its employees about which floor mats to use; and (3) it was disputed which floor mats were

21

in the car when it was loaned to a previous customer. All these facts relate to whether the vehicle was altered as described in paragraph (6) of the dealer agreement. As stated above, the court ruled and we agreed, there was no duty to indemnify under paragraph (1) of the dealer agreement. The provisos under paragraphs (5) and (6) were merely additional grounds for the ruling. Thus, additional facts relating to the application of paragraph (6) would not have changed the outcome. And contrary to Baker's contention, the trial court never ruled Baker's placement of the floor mats caused the accident. It simply ruled Toyota would not need to indemnify Baker if the jury determines it negligently placed the wrong floor mats in the car causing damages. Based on this record, we find no due process error. Moreover, we have reviewed the record de novo and the summary judgment did not require the supplemental evidence Baker complains about.[4]

### vi. Evidentiary Objections

Baker requests this court review de novo the 14 pages of evidentiary objections it submitted to the trial court. Relying on *Reid v. Google, Inc.* (2010) 50 Cal.4th 512 (*Reid*), Baker asserts that if a trial court fails to expressly rule on objections, the objections are preserved for appeal and must be reviewed de novo. We note Baker fails to discuss the complete holding of *Reid.* Our Supreme Court held that "if the trial court fails to rule expressly on specific evidentiary objections, *it is presumed that the objections have been overruled, the trial court considered the evidence in ruling*

---

[4] We recognize the legislative history of section 11713.13 was included in Toyota's supplemental materials, and we relied upon those documents in this opinion. But Baker does not object to the consideration of these documents and, in fact, relied upon them in its opening brief. In any event, "To determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice." (*In re J.W.* (2002) 29 Cal.4th 200, 211.) If these government documents had not been provided by the parties, we could have obtained and taken judicial notice of the legislative history on our own motion. (Evid. Code, §§ 452 subd. (c), 459 [official government documents]). Baker was not prejudiced by the admission of this evidence.

*on the merits of the summary judgment motion,* and the objections are preserved on appeal." (*Id.* at p. 534, italics added.) Consequently, although the issue is preserved, it is presumed the objections were overruled, and the court's ruling is presumed correct. An appellant has the burden of overcoming the presumption of correctness by affirmatively showing error on an adequate record. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.) Moreover "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Because Baker failed to provide argument or legal authority to support his position the trial court erred in making an evidentiary ruling, we deem the issue waived.

### III

The judgment is affirmed. Respondents shall recover costs on appeal. Respondents' request for judicial notice is denied. The petition for writ of supersedeas is dismissed as moot.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


IKOLA, J.


23