Filed 2/4/15  Davidson v. Red Robin International CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT DAVIDSON, | C069041 |
| Plaintiff and Appellant, | (Super. Ct. No. 34200900059014) |
| v. | |
| RED ROBIN INTERNATIONAL, INC., et al., | |
| Defendants and Respondents. | |

Plaintiff Robert Davidson appeals from judgments of dismissal following grants of summary judgment to defendants Red Robin International, Inc. (Red Robin) and Michele Hernandez.  Plaintiff contends triable issues of material fact preclude summary judgment on his claims alleging workplace sexual harassment (Gov. Code, § 12940, subd. (j)), constructive discharge, and intentional infliction of emotional distress.  (Unless otherwise stated, statutory references are to the Government Code.)  Plaintiff also contends the trial court abused its discretion in denying his request for leave to amend his complaint to add

1

a claim against Red Robin for failure to prevent sexual harassment in the workplace (§ 12940, subd. (k)). We reject these contentions and affirm the judgments.

FACTS AND PROCEEDINGS

On review of summary judgment, we view the facts in the light most favorable to plaintiff as the losing party on summary judgment. (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 884, fn. 5.)

On June 2, 2009, plaintiff began working as a server at Red Robin's restaurant in Citrus Heights. He previously worked at Red Robin locations in Concord and Irvine and wanted to work at the Roseville/Creekside Red Robin, which was closer to his Auburn home, but was told they could only offer him limited hours. Plaintiff was aware of Red Robin's antiharassment policy, which invited employees to initiate a complaint by talking to an immediate supervisor or manager, calling the Home Office, or reporting it on a website provided by Red Robin.

In June of 2009, Hernandez was an assistant manager at the Citrus Heights Red Robin. She supervised hosts, bussers, and food expediters, while a different assistant manager, Amber Parker, supervised servers such as plaintiff. However, Hernandez had some supervisory duties over servers, e.g., she checked that they arrived for work on time, dressed appropriately, and she determined when they could leave based on the amount of sales. The assistant managers reported to Andrew Long, General Manager of the Citrus Heights Red Robin. The general managers reported to Amanda Busby, Red Robin's Regional Operations Director.

Plaintiff worked at the Citrus Heights Red Robin a total of 14 days between June 2 and June 21, 2009. He worked the same shift as Hernandez about half the time.

On at least two occasions, plaintiff socialized outside of work with another server, Carrie Branson. First, Branson said she thought Hernandez was a bitch and a whore. On a second occasion, Branson "backtracked," said Hernandez found plaintiff "sexy" and

2

wanted to meet him outside of work. Plaintiff expressed discomfort, and Branson asked if he was a "faggot." Plaintiff thought Branson was playing a game, though he had observed Hernandez being inappropriately flirtatious with other employees at work.

On June 13, 2009, plaintiff again asked to work at the Roseville/Creekside Red Robin because it was closer to his home. Long e-mailed the Roseville/Creekside manager, who replied they did not need any servers, which Long relayed to plaintiff. Long did not discuss the matter with Hernandez, but Hernandez read the e-mails.

On June 21, 2009, plaintiff was at work when Branson extended an invitation by Hernandez to meet him at Branson's house at 6:00 p.m. Plaintiff declined. Hernandez then approached plaintiff in the cocktail bar service area, pressed her breasts against plaintiff's arm, and said, "A little bird told me you wanted to transfer[.] I will tell them you are a dish washer, you're way too cute[.] I'm not letting you go." She also said she was responsible for giving him more working hours, and he should not "fuck this up." He asked if she had spoken with Branson. Hernandez said, "that's for me to know and you to find out." Plaintiff believed Hernandez would deny him hours and a transfer if he did not consent to her sexual advances. Hernandez walked away. After a nine-hour shift, plaintiff asked assistant manager Parker if he could leave, and she said yes. As he was preparing to leave, Hernandez approached, "again, rubbed up against" him, and whispered, "you're a bad boy . . . oh you're a bad boy . . . If you think I'm a good girl, boy do I have you fooled . . . oh what I'd do to you" Plaintiff told Hernandez her actions were inappropriate.

Plaintiff left and never returned to work after June 21, 2009. At first, he did not complain of harassment but simply made excuses to get out of work and had other people cover his shifts.

We note that plaintiff said he did not complain to general manager Long, because Long had a "playful" relationship with Hernandez. An employee's failure to avail himself of protections offered by the employer may reduce the amount of damages but

3

does not provide the employer a complete defense.  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1042 (*Health Services*).)

On June 22, 2009, plaintiff received a text message from Branson with a phone number and message "call her and talk to her.  I work tonight ill talk to you then love you bye."  On June 23, 2009, plaintiff received a text message from Hernandez saying, "hey its Michele were [sic] are you?"  Plaintiff also received voicemails from Branson and Hernandez, asking him to call.  Plaintiff also received a voicemail from Branson and Hernandez together, stating, "Hey Austin [plaintiff's nickname] it's Michele give me a call back um Carry said she'll pick up your shift tomorrow if you need her to, and let me put it in the book for you so you don't get your ass fired for just sending people in here to cover for you.  Um and if you need a ride give her a call don't wait for the last minute so . . . [Carrie] [H]e's in Auburn.  [Michele] You sure he[']s in Auburn not on Auburn making some money that's why he[']s not coming in for his shifts.  He doesn't know about the Auburn strip.  [Carry]  He does now, probably making more money there. [Michele] OK so call me back OK bye."

Plaintiff testified in deposition that he received a text message from an unknown number on June 25, 2009, saying, "I have a hot ass 4 u."  He also received a text message from an unknown number on June 27, 2009, saying, "I want to ride a few big thick cocks tonight honey all night oh ya."  Plaintiff said he never previously received such messages.

On June 26, 2009, plaintiff for the first time complained to Red Robin about harassment.  He contacted Human Resources, which put him in touch with Busby.  She told plaintiff to return to work, and he would not be working with Branson or Hernandez. Plaintiff considered that unacceptable because Red Robin did not promise he would *never* have to work with either woman in the future.

Busby relayed the complaint to Long and asked him to follow up, since she was going on vacation.

On June 29, 2009, Long called and left a message for plaintiff. On July 1, 2009, plaintiff returned the call. Plaintiff related what happened and said he was not quitting but was not ready to return to work. On July 3, 2009, Long told plaintiff to return to work because Hernandez would not be at the Citrus Heights location, and he would not have to work the same shifts as Branson. Plaintiff said he was not ready to return. On July 7, 2009, Long called, provided a work schedule and repeated that plaintiff would not have to work with Hernandez or Branson. On July 10, 2009, Long called and asked plaintiff if he was going to return to work. Plaintiff said he would no longer be working at Red Robin because his life was "going into a different direction" and he was moving to his sister's home in San Francisco. According to plaintiff, his real reason was that Red Robin never told him how his complaint was going to be addressed or what was going to be done and never assured him he would *never* have to work with Hernandez or Branson ever again.

Plaintiff filed administrative complaints against both defendants with the Department of Fair Employment and Housing (DFEH), checking the boxes for harassment, constructive discharge, and retaliation. Plaintiff did not check the box for "failure to prevent discrimination." DFEH issued right-to-sue notices.

On September 25, 2009, plaintiff filed his complaint alleging sexual harassment and intentional infliction of emotional distress against Red Robin and Hernandez. The complaint also alleged constructive discharge against Red Robin only.

In April and May 2011, defendants filed separate motions for summary judgment or summary adjudication of issues on identical grounds that (1) the harassment claim failed as a matter of law because the alleged conduct was not "severe" or "pervasive" and did not alter the conditions of employment or create a hostile work environment or meet the elements of quid pro quo sexual harassment, and (2) the claim for intentional infliction of emotional distress failed because there was no extreme and outrageous conduct. Red Robin's motion added that the constructive discharge claim failed as a

5

matter of law because there was no evidence that Red Robin created unbearable and intolerable working conditions such that a reasonable person would feel compelled to resign.

Red Robin argued that, even if the trial court found a triable issue as to whether Hernandez's conduct was severe or pervasive, plaintiff could not show it altered his working conditions because he never returned to work after June 21, 2009, and Red Robin fired Hernandez a few days later as a result of an unrelated complaint against her by a different employee. Red Robin submitted a declaration from Busby attesting Red Robin disciplined Hernandez in March 2009 (before plaintiff joined the crew) for making inappropriate comments of a sexual nature at work and warned her further incidents could jeopardize her job. Declarations from Busby and Long also attested they received another complaint about Hernandez on June 23, 2009, from a female employee who said Hernandez had an inappropriate conversation with a male employee (not plaintiff) regarding a sex toy, a "sex swing," he had in his home. Red Robin placed Hernandez on leave of absence on June 24, 2009, and fired her on June 28, 2009.

Hernandez submitted her own declaration attesting she did not supervise or prepare the schedules for the servers, had no authority over transfers, and had nothing to do with plaintiff's transfer requests.

After being served with the summary judgment motions, plaintiff finally decided to do some discovery. He deposed Long, who said he reviewed his declaration and found a mistake -- he received the complaint about the sex toy conversation on June 8, 2009, not June 23 as stated in the declaration. On June 12, 2009, Long spoke with the male employee. By the following day, Long believed Hernandez should be terminated. Long discussed the matter with Hernandez on June 24, 2009. Long obtained a statement from Hernandez on June 27, 2009, felt she was untruthful, and fired her on June 28, 2009. Plaintiff included these excerpts in his opposition to Red Robin's motion and argued Red

6

Robin may be liable for its own conduct in failing to prevent Hernandez's harassment of plaintiff under section 12940, subdivision (k).

In its reply papers, Red Robin objected that the complaint limited the issues material to summary judgment, and plaintiff's complaint did not present a claim for failure to prevent harassment, nor had he checked the box for "failure to prevent" in the form DFEH complaint.

The hearing on the motions took place on July 18, 2011. At the hearing, plaintiff argued he was "not even specifically aware" he had a claim for failure to prevent harassment until he took Long's deposition on June 21, 2011. Plaintiff's counsel argued "there is a tactical reason not to -- for a plaintiff in a case like this not to conduct some discovery until after a motion for summary judgment is filed so that I can test the sufficiency of the declarations and the information and evidence presented in the summary judgment motion. [¶] I do that in a number of my cases these days." Plaintiff argued his complaint should be construed to include a claim for failure to prevent harassment, or the court should grant leave to amend the complaint to add the claim. Red Robin reiterated its objection to adding a new claim. The trial court denied leave to amend, telling plaintiff's counsel the court had "some issues with your lack of diligence. Now, you say it was a tactical decision, but if that's your tactical decision, then you live or die by that tactical decision."

The trial court issued an order granting Red Robin's motion for summary judgment on July 28, 2011, and entered judgment in favor of Red Robin on August 4, 2011. The trial court's order concluded plaintiff could not avoid summary judgment by producing evidence to support claims not raised by the pleading. The court also concluded the alleged misconduct was not severe or pervasive so as to create a hostile work environment. Hernandez's alleged misconduct at work -- touching and sexually-suggestive talk -- occurred on a single day. It was inappropriate and rude but not comparable to conduct found actionable in other cases. The texts and voicemails from

7

Hernandez and Branson, though perhaps overly familiar and teasing, were not sexually explicit. As to the two sexually explicit text messages, plaintiff did not recognize the phone number and presented no evidence that either came from Hernandez or Branson. Nor could plaintiff show quid pro quo harassment, because he never returned to work and could not show he was deprived of a job benefit. For the same reasons, and given that Red Robin told plaintiff he would not have to work with Hernandez or Branson, plaintiff could not prevail on a claim of constructive discharge. Nor was the conduct so extreme or outrageous to support a claim for intentional infliction of emotional distress.

On August 3, 2011, the trial court issued an order granting Michele Hernandez's motion for summary judgment for reasons similar to those in granting Red Robin's motion. Though not mentioned by the parties on appeal, the record on appeal contains only the order granting summary judgment, not a formal judgment. However, the order states that "this action be and is hereby dismissed," and our review of the Superior Court file shows a cost award to Hernandez was added to the order on August 18, 2011. Under these circumstances, we will treat the order as incorporating a judgment as to Hernandez.

DISCUSSION

I

*Introduction*

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that

8

the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.] We review the record and the determination of the trial court de novo. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)

Under "[t]he historic paradigm for our de novo review of a motion for summary judgment . . . [w]e first identify the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine if the moving party has established a prima facie entitlement to judgment in its behalf. Only if the moving party has satisfied this burden do we consider whether the opposing party has produced evidence demonstrating there is a triable issue of fact with respect to any aspect of the moving party's prima facie case." (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734-735.)

We review the trial court's denial of leave to amend the pleading under an abuse of discretion standard. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)

II

*Sexual Harassment*

Plaintiff argues Hernandez was responsible for harassing him over a period of time, with Hernandez first using Branson to initiate the harassment. Plaintiff argues that, even if the harassment is limited to the single day of June 21, 2009, Hernandez's conduct was severe enough to be actionable. We conclude no triable issue exists to support the sexual harassment claim. We disregard plaintiff's argument that the trial court applied the wrong standard and improperly weighed the evidence, because our review is de novo.

The Fair Employment and Housing Act (FEHA) protects employees from sexual harassment in the workplace. (§ 12940, subd. (j)(1).) Sexual harassment is divided into two categories: (1) hostile work environment, where the harassment is sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work

9

environment; and (2) quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1042-1043 (*Hughes*).)

Here, plaintiff's complaint alleged hostile work environment, in that he was subjected to "pervasive sexual harassment and discrimination." The complaint also alleged Hernandez denied his request for a transfer due to his refusal to submit to her sexual advances, but he does not advance a quid pro quo theory on appeal, presumably in light of the evidence refuting such claim, and we therefore need not consider it. (*Wall Street Network, Ltd. v. New York Times Co*. (2008) 164 Cal.App.4th 1171, 1177 [abandonment on appeal].)

The FEHA's prohibition against sexual harassment " 'includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex.' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 277 (*Lyle*).) "[T]o establish liability in a FEHA hostile work environment sexual harassment case, a plaintiff employee must show [he] was subjected to sexual advances, conduct, or comments that were *severe enough or sufficiently pervasive to alter the conditions of [his] employment and create a hostile or abusive work environment.* [Citations.]" (*Id*. at p. 283, original italics.) "[A]n employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature. [Citations.] That is, when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions. (See *Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 150-153 [(*Herberg*)] [liability for sexual harassment may not be imposed based on a single incident that does not involve egregious conduct akin to a physical assault or the threat thereof] . . . .) Moreover, when

10

a plaintiff cannot point to a loss of tangible job benefits, [he] must make a ' "commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment." ' [Citations.]" (*Lyle, supra*, 38 Cal.4th at pp. 283-284.) "To be actionable, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' [Citations.]" (*Id.* at p. 284.)

The standard of employer liability depends on whether the harasser is the victim's supervisor or a nonsupervisory employee. (*Health Services*, *supra*, 31 Cal.4th at p. 1042.) The employer is liable for harassment by a nonsupervisory employee only if the employer knew or should have known of the harassing conduct and failed to take corrective action, i.e., a negligence standard. (*Id.* at p. 1041.) Because the FEHA imposes this negligence standard only for harassment "by an employee other than an agent or supervisor" (§ 12940, subd. (j)(1), "by implication the FEHA makes the employer strictly liable for harassment by a supervisor." (*Health Services,* at p. 1041.) "Under the FEHA, an employer is strictly liable for *all* acts of harassment by a supervisor." (*Id.* at p. 1042.) *Health Services* held a plaintiff's failure to avail herself of her employer's antiharassment procedures afforded the employer a partial defense to strict liability as to the amount of damages, but did not afford the employer a complete defense warranting summary judgment. (*Id.* at pp. 1044-1045.)

As an example of a sufficiently severe isolated incident, in *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal.App.4th 1403, 1419 (*Myers*), we held a triable issue precluded summary judgment where the plaintiff's supervisor drove her to a business meeting, and in the car on the way back to the office put his hand on her leg, told her he could please her sexually, tried to put her hand on his leg, drove to his home, pulled into the garage and shut the garage door, pushed himself on her, kissed her on the mouth, tried to put his hand up her dress, pushed her against the car when she tried to get away,

unbuttoned some buttons on her dress, and touched her bra and breasts. (*Id*. at pp. 1416, 1425.)

In contrast, "other courts have found that even unwelcome sexual touching is insufficient to constitute severe or pervasive harassment when the incidents are isolated and there is no violence or threat of violence. (E.g., *Candelore v. Clark County Sanitation Dist*. (9th Cir. 1992) 975 F.2d 588, 590 (per curiam) [affirming summary judgment for defendant where 'isolated incidents of sexual horseplay alleged by Candelore took place over a period of years and were not so egregious as to render Candelore's work environment "hostile" ']; *Del Valle Fontanez v. Aponte* (D.P.R. 1987) 660 F.Supp. 145, 146-147, 149 [incident where defendant 'pressed [plaintiff] against the door with his body' and plaintiff 'felt defendant's erect sexual organ against her body' twice in a five-minute period was not severe or pervasive enough to create a hostile working environment]; *Saxton v. American Tel. & Tel. Co*. (7th Cir. 1993) 10 F.3d 526, 528, 534 [affirming summary judgment in favor of defendant where plaintiff was rubbed and kissed on one occasion and resisted an attempted groping on another].)" (*Herberg, supra*, 101 Cal.App.4th at p. 153 [affirmed summary judgment in favor of art institute where employee sued for sexual harassment due to employer's display of student drawing depicting plaintiff bare-breasted and straddling a nude male faculty member's groin as though engaged in sexual intercourse].)

While the FEHA differs in wording from the federal law prohibiting workplace harassment (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.), the antidiscriminatory objectives and overriding public policy purposes are identical. (*Hughes, supra*, 46 Cal.4th at p. 1043.) The FEHA mirrors the federal law in requiring a plaintiff in a hostile work environment claim to show harassing conduct severe or pervasive enough to alter the conditions of employment. (*Ibid*.)

Plaintiff argues a lesser degree of severity will suffice to impose liability where the harasser is the victim's supervisor. He cites no supporting authority. He refers to

12

*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, cited by defendants. *Mokler* held the county employer was entitled to judgment notwithstanding the verdict where a member of the board of supervisors (Norby), who did not supervise an agency director (1) called her an "aging nun" because she was unmarried; (2) on a different day pulled her to him so the sides of their bodies were touching, said she had nice legs, and looked her up and down; and (3) on a different day put his arm around her, demanded that she give him her address, and rubbed her breast with his arm. (*Id.* at p. 145.) *Mokler* said: "The first incident involved no touching or sexual remarks; rather, Norby uttered an isolated but boorish comment on Mokler's marital status. The second incident did not occur at work, and involved a minor suggestive remark and nonsexual touching. The third incident involved touching when Norby placed his arm around Mokler and rubbed his arm against her breast in the process. The touching, however, was brief and did not constitute an extreme act of harassment. Norby's request for Mokler's home address was brazen, but this conduct falls short of what the law requires to establish a hostile work environment. . . . [¶] Taken as a whole, the foregoing acts demonstrate rude, inappropriate, and offensive behavior. To be actionable, however, a workplace must be ' "permeated with 'discriminatory intimidation, ridicule and insult,' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " ' [Citation.] The acts Mokler has alleged here are similar in scope to those found insufficient to constitute a hostile work environment in other cases. (See, e.g., *Quinn v. Green Tree Credit Corp.* (2d Cir. 1998) 159 F.3d 759, 768 [harasser's statement that plaintiff had been voted the ' "sleekest ass" ' in the office and single deliberate act of touching plaintiff's breasts with papers he was holding in his hand held insufficient]; *Weiss v. Coca-Cola Bottling Co. of Chicago* (7th Cir. 1993) 990 F.2d 333, 337 [insufficient where supervisor told plaintiff how beautiful she was, repeatedly asked her out, tried to kiss her on three separate occasions, put ' "I love you" ' signs on her work area, and touched her shoulder at least six times];

13

*Chamberlain v. 101 Realty, Inc*. (1st Cir. 1990) 915 F.2d 777, 783 [five sexually motivated advances on plaintiff over a four- or five-week period held insufficient for hostile work environment].)" (*Mokler, supra*, 157 Cal.App.4th at p. 145.)

Plaintiff argues the standard applied in *Mokler* is limited to harassment by *nonsupervisory* employees, because it began its discussion by stating, "Norby did not supervise Mokler or work in the same building with her." (*Mokler*, *supra*, 157 Cal.App.4th at p. 145.) However, this comment merely reflects the reality that conduct by a nonsupervisory employee is less likely to meet the requirement of "alter[ing] the conditions of employment" than conduct by a supervisory employee.

Plaintiff cites *Dee v. Vintage Petroleum, Inc*. (2003) 106 Cal.App.4th 30 (*Dee*), for the proposition that a single act of harassment *by a supervisor* can create a hostile work environment. However, *Dee* did not involve a single act. The plaintiff's supervisor required her to discuss personal matters with him, called her a "bitch," constantly used the word "asshole" in her presence, ordered her to do things and then berated her when she got caught following his orders, and told her he could get support for any termination decisions from his friend, the board chairman. (*Id*. at p. 33.) The supervisor told her to "make up stories" to hide information from a manager. She protested she could not lie. The supervisor denied telling her to lie and said, "it is your Filipino understanding versus mine." (*Ibid*.) The appellate court, in reversing summary judgment for the employer, said a trier of fact could infer that the ethnic slur was not an isolated event because it explained the supervisor's motivation for his other conduct. (*Id*. at pp. 36-37.)

*Dee* is not on point. Plaintiff relies on *Dee* because it said: "In many cases, a single offensive act by a coemployee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a supervisor, the result may be different. (*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 927, fn. 9.) In *Brooks*, Selvaggio, a male employee, made improper advances and touched the breast of a female employee. The Ninth Circuit Court of Appeals held that this single incident

14

was insufficient to support a title VII claim. But it also stated, 'A different question would arise if Selvaggio were Brooks' supervisor, rather than her co-worker. Because the employer cloaks the supervisor with authority, we ordinarily attribute the supervisor's conduct directly to the employer.' (*Ibid*.) 'Thus, a sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim.' (*Ibid*.)" (*Dee, supra*, 106 Cal.App.4th at p. 36.)

We thus reject plaintiff's argument that a lesser degree of severity suffices for supervisory employees.

Here, there was no severe or pervasive harassment altering the conditions of employment. The most serious events occurred on a single day. Hernandez made inappropriate sexual comments and briefly pressed her breast against plaintiff's arm and, in plaintiff's own words, Hernandez later "again, rubbed up against" him, which suggests she again pressed his arm. There is no indication that Hernandez touched plaintiff's private parts. The other events were trivial. Branson's earlier conveyance of Hernandez's interest in plaintiff was brief and innocuous. Branson's use of the word "faggot" was inappropriate, but plaintiff did not sue Branson, does not claim Red Robin is liable for the nonsupervisory coworker's use of the word, and does not present any evidence that Red Robin knew or should have known of Branson's conduct so as to support such a claim. Hernandez's subsequent phone calls and text messages merely expressed concern for an employee who, without explanation, was not showing up for work. The call referencing Auburn Boulevard was obviously a stupid joke. The obscene text messages did not come from Hernandez's phone number but rather from a caller whose identity plaintiff could not determine.

Moreover, Hernandez was a low-level supervisor whose conduct did not alter plaintiff's working conditions. As plaintiff testified, Hernandez did not personally express her interest in him until June 21, 2009. Before that, plaintiff was not even sure if

15

Branson was serious. After the incidents on June 21, 2009, plaintiff never returned to work, despite assurances he would not have to work with Hernandez or Branson. Despite plaintiff's asserted belief that Hernandez controlled his hours, he did not dispute that it was Parker, not Hernandez, who made his schedule. Hernandez's suggestion that she did not want plaintiff to transfer to another restaurant did not alter plaintiff's working conditions, because his request for transfer had already been denied for reasons unrelated to Hernandez, and plaintiff never returned to work after June 21, 2009.

In his reply brief, plaintiff argues that, because he said he never previously received obscene messages, a jury could infer they were sent by Hernandez or at her behest. We disregard arguments raised for the first time in the reply brief. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 (*Garcia*); *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 763-766 (*Reichardt*).) Moreover, the contention lacks merit. It is a common experience of modern life to receive unsolicited communications from marketers or pranksters of all sorts. Plaintiff's cited authority, *Halstead v. Paul* (1954) 129 Cal.App.2d 339, is inapposite. *Halstead* reversed a judgment of nonsuit in a personal injury action, where the defendant fell asleep while driving a vehicle, drove off the road, and injured a passenger. The law provided that where a driver falls asleep while driving, awakens, continues driving, falls asleep a second time, and has an accident, it was a question for the jury whether the driver was guilty of willful misconduct in continuing to drive after once falling asleep. (*Id*. at pp. 340-341.) The question was whether the circumstantial evidence supported an inference that the defendant was asleep when the car passed over the center of the road a first time, shortly before the accident. *Halstead* found sufficient evidence to support the inference, in that the defendant had only an hour's sleep before driving to the coast and fishing for eight hours, got seasick, and while driving home on a straight open road, crossed the center line and traveled about 750 feet before returning to the proper lane, and the defendant admitted he was asleep when the accident occurred. (*Id*. at p. 341.)

16

Here, plaintiff's assertion he never received prior obscene messages does not support an inference that Hernandez was responsible. Even assuming for the sake of argument that such an inference could be drawn, it would not tip the scale in favor of liability.

We conclude there was no severe or pervasive conduct sufficient to constitute actionable harassment.

In his reply brief, plaintiff argues for the first time that Red Robin is liable for harassment because it failed to "immediately" remove Hernandez from the workplace on June 8, 2009, when Red Robin received a complaint about Hernandez's conversation about an employee's sex swing. It is improper for plaintiff to raise new points in the reply brief, and we need not consider them. (*Garcia, supra*, 16 Cal.4th at p. 482, fn. 10; *Reichardt, supra*, 52 Cal.App.4th at pp. 763-766.)

## III

### *Constructive Discharge*

To prevail on a claim of constructive discharge, the plaintiff must show the employer's misconduct effectively forced him to resign. (*Cloud v. Casey* (1999) 76 Cal.App.4th 895, 902.) Plaintiff must prove that Red Robin "either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Ibid*.) Adverse working conditions are not established by "[s]ingle, trivial, or isolated acts of misconduct." (*Id*. at p. 903.) Rather, " 'adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable.' " (*Id*. at pp. 902-903.)

Plaintiff argues Red Robin created intolerable working conditions by merely knowing that Hernandez had engaged in harassment on at least two other occasions.

17

Even assuming that Red Robin knew the other two incidents constituted harassment -- a point disputed by Red Robin -- that would not create intolerable working conditions for plaintiff. Red Robin disciplined Hernandez on the first occasion and was in the process of investigating the second complaint when Hernandez harassed plaintiff, which Red Robin did not know about until after it placed Hernandez on leave of absence for the unrelated sex toy discussion. When Red Robin learned of plaintiff's complaint, it assured him he would not have to work with Hernandez or Branson. Plaintiff's claims -- that Red Robin's assurance did not include the word "never" and did not tell him it fired Hernandez -- did not create conditions so intolerable that a reasonable person would leave the job.

Plaintiff argues Red Robin did not adequately investigate Branson and later allowed her to return to the Citrus Heights location. However, even if true, this does not support plaintiff's argument that it was reasonable for him to resign.

Plaintiff fails to show a triable issue of material fact regarding his claim of constructive discharge.

IV

*Intentional Infliction of Emotional Distress*

The elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct exceeding all bounds of that usually tolerated in a civilized community, (2) intention to cause, or reckless disregard for the probability of causing emotional distress, and (3) actual and proximate causation of emotional distress. (*Hughes, supra*, 46 Cal.4th at pp. 1050-1051.)

Here, there was no extreme or outrageous conduct exceeding all bounds of that usually tolerated in a civilized community, and we need not go further.

18

# V

## *Denial of Leave to Amend Complaint*

Plaintiff argues the trial court abused its discretion in denying leave to amend the complaint to add a claim against Red Robin for failure to prevent harassment.  We disagree.

First, as plaintiff agrees, he must show he was subjected to unlawful harassment in order to prevail on a claim for failure to prevent harassment.  (*Trujillo v. North County Transit Dist*. (1998) 63 Cal.App.4th 280, 289 [plaintiff cannot recover for an employer's failure to present harassment, absent a finding that the plaintiff actually suffered actionable harassment].)  The failure of plaintiff's harassment claim necessarily defeats his claim for failure to prevent harassment.

Moreover, plaintiff fails to show abuse of discretion.  "A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding.  [Citation.]  On a motion for summary judgment, ' "where the complaint is challenged and the facts indicate that a plaintiff has a good cause of action which is imperfectly pleaded, the trial court should give the plaintiff an opportunity to amend." '  [Citation.]  . . .  [¶]  [However,], unwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend [citation], and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence . . . ." '  [Citation.]  Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by

19

the pleadings.' [Citations.]" (*Falcon v. Long Beach Genetics, Inc.*, *supra*, 224 Cal.App.4th at p. 1280; see also, *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250, 1252-1253 [where plaintiff's complaint alleged automobile collision was caused by a dangerous condition of public property, i.e., inadequate sight distance and lack of warning signs, plaintiff could not raise for the first time in opposition to summary judgment the alleged dangerousness of the location of a light pole, where she did not seek leave to amend her complaint before the hearing on the summary judgment motion].)

A claim alleging an employer's failure to prevent harassment (§ 12940, subd. (k)) is an unlawful employment practice separate from a harassment claim (§ 12940, subd. (j)). (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4.) This is particularly so where the claim is of harassment by a supervisor, which makes the employer strictly liable.

Plaintiff cites *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 128, as holding that amendment should be liberally allowed if it does not "completely and entirely depart from the general area of the cause set up in the pleadings." However, that case does not help plaintiff. It reversed summary judgment where the defendants' moving papers in summary judgment were insufficient to demonstrate that the plaintiff-association lacked standing to sue on behalf of its members. (*Id.* at p. 128.) The appellate court said that, if the trial court decided that the named plaintiff could not suitably represent the class of injured parties, the court should afford an opportunity for amendment. (*Id.* at p. 129.)

Plaintiff takes issue with the trial court's determination that he failed to act with diligence. Plaintiff maintains he did not learn of the facts supporting the new claim until he took Long's deposition in late June 2011, after being served with Red Robin's summary judgment motion on April 20, 2011. Plaintiff says the Long deposition was less than two weeks before his opposition was due, and less than a month before the hearing was conducted on July 18, 2011. He says he acted with "attentiveness" after learning the

20

new facts. However, plaintiff says nothing about his lack of diligence in conducting discovery after filing his complaint on September 25, 2009. He did not take Long's deposition until a year and three-quarters after filing the complaint. Moreover, after learning the new facts, plaintiff had plenty of time to file a proper motion to amend the complaint (Cal. Rules of Court, rule 3.1324(a)), yet failed to do so, opting instead to request leave to amend at the summary judgment hearing.

In his reply brief, plaintiff argues for the first time that the evidence he presented with his statement of additional disputed facts opposing summary judgment -- concerning Red Robin's investigation of Hernandez's harassment of other employees -- "supplemented" his complaint so as to add a claim for failure to prevent harassment or "cured any ambiguity" in his complaint. Plaintiff claims there was no evidentiary objection or ruling regarding his evidence that Long admitted in his deposition that his declaration contained an error and that he was investigating another employee's complaint about Hernandez on June 8th, before occurrence of the incidents involving plaintiff.

There are several problems with plaintiff's arguments. First, we disregard new points raised for the first time in a reply brief. (*Garcia, supra*, 16 Cal.4th at p. 482, fn. 10; *Reichardt, supra*, 52 Cal.App.4th at pp. 763-766.) Second, there is no ambiguity in the complaint, which plainly omits any claim against Red Robin for failure to prevent harassment. Nor did plaintiff check the box for "failure to prevent discrimination" in the DFEH complaint he filed. Third, Red Robin did assert, both in its reply papers and at oral argument in the trial court, that plaintiff's evidence about other employees' complaints was immaterial because the complaint contained no allegation against Red Robin for failure to prevent harassment. Hernandez similarly argued the facts were immaterial. Even where the trial court has not sustained an objection to evidence, it is presumed that the trial court did not consider irrelevant or incompetent evidence in ruling on summary judgment motions. (*Wyckoff v. State of California* (2001) 90 Cal.App.4th

21

45, 57.)  Fourth, plaintiff cites no authority that his evidentiary submissions can "supplement" the complaint.  He cites our opinion in *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367 (*FPI Development*), that some defects in a complaint, "unless properly objected to," may be overcome by a factual showing which is treated as a supplement to the pleading where it is plausibly connected to the original claim. (*Id*. at pp. 382-383.)  But, as indicated, Red Robin did properly object.

It is the pleadings, not the evidentiary submissions, which "delimit the scope of the issues" and frame "the outer measure of materiality in a summary judgment proceeding."  (*FPI Development, supra*, 231 Cal.App.3d at p. 381.)  A defendant moving for summary judgment need only negate the plaintiff's theories of liability as alleged in the complaint and need not refute liability on some theoretical possibility not included in the pleadings.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1254; *Hutton v. Fidelity National Title Co*. (2013) 213 Cal.App.4th 486, 493.)  The papers filed in opposition to a defense motion for summary judgment are not pleadings (*Myers v. Trendwest Resorts, Inc*. (2009) 178 Cal.App.4th 735, 746-747), may not create issues outside the pleadings and are not a substitute for amendment of the pleadings. (*Hutton, supra*, 213 Cal.App.4th at p. 493.)  "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings.  [Citation.]  If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.  [Citations.]"  (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265.)

We conclude the trial court did not abuse its discretion in denying leave to amend.

DISPOSITION

The judgments are affirmed.  Defendants shall recover their costs on appeal  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


                                                       HULL            , J.



We concur:



       BLEASE            , Acting P. J.



       MAURO           , J.

23